Sammy D. APPLEWHITE, Plaintiff-
Appellant,

v.

MEMPHIS STATE UNIVERSITY et al.,
Defendants-Appellees.

Supreme Court of Tennessee.

May 14, 1973.

Bruce Conley, Charles E. Maness, Maness, Conley & Hayes, Union City, for plaintiff-appellant.

David M. Pack, Atty. Gen., of Tenn., C. Hayes Cooney, Asst. Atty. Gen., Nashville for Memphis State University.

J. Alan Hanover, Allen S. Blair, Hanover, Walsh, Barnes & Jalenak, Memphis, for Memphis State University Press.

J. B. Cobb, Memphis, for Paul J. Vanderwood.

## OPINION

DYER, Chief Justice.

This is a direct appeal from the judgment of the trial judge sustaining the motions to dismiss filed by each of the defendants, after determining the cause of action was barred by the applicable statute of limitations and by the doctrine of sovereign immunity as it applied to some of the defendants.

On December 2, 1970, the plaintiff, Sammy D. Applewhite, filed this suit alleging that a book entitled "Night Riders of Reelfoot Lake" written by the defendant, Paul J. Vanderwood, and published by the defendant, Memphis State University Press, Inc., which was written by Mr. Vanderwood while he was an employee of Memphis State University, contained certain false statements which were published with such willful disregard for the truth that they were calculated to defame, humiliate and embarrass the plaintiff. Specifically, the plaintiff referred to the following excerpt from the book:

There is still sporadic violence of the crudest sort; for example, Sam Applewhite, a defendant in the Riders' trial was later killed by his son in a knife fight.

According to a stipulation of the parties, copies of the book were released for sale on October 16, 1969, and the first book was sold on October 27, 1969. The plaintiff alleged in his complaint copies of the book were sold in Obion County during the months of October and November, 1970, just prior to the date on which he filed this lawsuit.

The trial judge filed a written decision in this matter on March 20, 1972, dismissing the suit in its entirety on the pleas of the defendants of the statute of limitations and governmental immunity. The plaintiff-appellant has assigned error regarding each ground for the dismissal.

In considering the question of whether the statute of limitations period has expired, it is necessary at the outset to determine whether the printing, publishing and sale of a large number of books gives rise to a single cause of action or to numerous causes of action, each one accruing when an individual copy is distributed to a buyer. The issue is, specifically, whether Tennessee law approves the "single publication rule" or the "multiple publication rule" regarding actions for libel. If numerous causes of action have arisen, sales of the book in October and November, 1970, created causes of action not barred by the statute of limitations. If a single cause exists the action may be barred.

The traditional common law approach to libel actions has been that each communication of a defamatory statement gives rise to a new cause of action and, thus, the printing and delivery of copies of one edition of a newspaper or book would create many causes of action. A number of recent decisions, however, have held that a single cause of action arises in those circumstances and the single complaint en-

compasses all the acts of printing and distribution by the defendants.

The trial judge in his opinion wrote that "the precise question is not answered by any Tennessee cases or statutes." Inasmuch as counsel for the appellant has cited additional Tennessee authority in his brief on appeal, it is, however, necessary to discuss the cases and statute which have been noted. It is the appellant's contention that the law of Tennessee as stated by the courts and Legislature is that every delivery of a libelous statement constitutes a separate cause of action.

In Underwood v. Smith, 93 Tenn. 687, 27 S.W. 1008 (1894), the plaintiff filed an action based on an article written by the defendant Smith and published in the April 12, 1892 edition of the morning newspaper, the Knoxville Daily Tribune. The same article had been printed on the evening of April 11, 1892, in the Knoxville Evening Sentinel, and the plaintiff had been awarded a judgment for $340.00 in an action based on the publication in the Evening Sentinel. The Court reversed the trial court's dismissal and determined that the second action was not barred by application of the doctrine of res judicata.

The Court found the printings in different newspapers to create two causes of actions which involved different evidence, damages, and possible defendants based on differences in the times of distribution and number of purchasers. That case did not consider the question of whether separate copies of the same issue would create separate causes of actions and that is the question in the case before us. Absent a publication of Mr. Vanderwood's statement elsewhere than this book, the *Underwood* decision is inapplicable.

In Riley v. Dun & Bradstreet, 172 F.2d 303 (6th Cir. 1949), the Court determined that the one-year statute of limitations in Tennessee did not bar an action based on the republication of a libelous report two months before the action was commenced. In the case, sub judice, however, no second edition or other reprinting has been shown and the Riley case does not consider whether recent distribution without a republication would support an action.

In Forgey v. Wallin, 197 Tenn. 20, 270 S.W.2d 342 (1954), this Court said:

It is settled law in this State that each publication of a libel constitutes a separate cause of action. Underwood v. Smith, 93 Tenn. 687, 27 S.W. 1008. 197 Tenn. at 26, 270 S.W.2d at 344.

The *Underwood* case, referred to above, was concerned with two newspapers rather than numerous copies of a single book or newspaper and to that extent, the statement in *Forgery* was not an endorsement of the multiple publication rule. Moreover, the statement was dictum used to illustrate the breadth of an action for libel and supporting the court's holding that actions for libel and slander could not be included by amendment within an action for breach of contract.

The plaintiff argues the term "publication" has been so defined by Tennessee law that every instance of the distribution of a libelous writing must be a separate cause of action. Particularly, the appellant cites Little Stores, et al v. Isenberg, 26 Tenn. App. 357, 172 S.W.2d 13, 16 (1943), which said that "publication in the law of defamation is the communication of defamatory matter to a third person . . . ." 36 C.J. § 169. Likewise, reference is made to T.C.A. § 39–2702, regarding criminal libel which states:

No printing, writing, or other thing is a libel without publication; but the delivering, selling, reading, or otherwise communicating a libel, or causing the same to be delivered, sold, read or otherwise communicated to one or more persons or to the party libeled, is a publication thereof.

■ ■ The term "publication" causes some confusion in a libel case such as this because it is both a business term meaning

printing and distribution of written materials and a legal term meaning communication of libelous matter to a third person. Painter, "Republication Problems in the Law of Defamation." 47 Va.L.Rev. 1131 (1961); 62 Harv.L.Rev. 1041 (1949). Moreover, "publication" used as a legal term in the *Isenberg* case and in T.C.A. § 39–2702 does not determine how many causes of action are created by printing and distribution of a libelous book. Rather, use of the legal term in those instances merely indicates that publication is an essential element of a libel action without which the complaint must be dismissed. Thus, after an edition of a book is printed and one copy is sold to a third party, then a cause of action for libel can be sustained. As to whether additional sales create additional actions, on this precise question involved in this case, Tennessee law is silent.

A review of the Tennessee authorities, therefore, supports the trial judge's determination that Tennessee has not adopted the multiple publication rule or the single publication rule. Therefore, it is necessary to consider the nature of such rules and the policies which support their application.

The traditional common law rule was that distribution of numerous copies of a libelous writing created multiple causes of action each one accruing at the time of distribution. Hence, in the case of Duke of Brunswick v. Harmer, 14 Q.B. 185, 117 Eng.Rep. 75 (1849), a statement in a newspaper published seventeen years earlier was the basis of an action which relied on a sale within the existing six-year statute of limitations. That rule was approved in the First Restatement of Torts § 578, Comment (b). However, few jurisdictions have re-affirmed it recently.

Under the single publication rule,

. . . an entire edition of a newspaper, magazine or book is treated as only one publication and the plaintiff is permitted to plead and prove merely a general distribution of the libel and show the extent of the circulation as evidence

bearing on the damages. Prosser, Torts § 113, at 769.

This rule has the support of authors of leading treatises. Prosser, supra; F. Harper and F. James, The Law of Torts § 5.16 at 394. Likewise, the commissioners on Uniform State Laws have prepared the Uniform Single Publication Act, which has been enacted by several states.

The single publication rule has been developed by the courts of many states as a part of the common law. See Annot. "What Constitutes 'Publication' of Libel in Order to Start Running of Period of Limitations". 42 A.L.R.3d 807. In fact, Professor Prosser has said that the "majority of American courts" have developed the rule (Prosser, Torts § 113, at 769), and a quarter century ago the rule was described as "firmly established." Gregorie v. G. P. Putnam's Sons, 298 N.Y. 119, 81 N.E.2d 45, 47 (1948). In Ogden v. Association of the United States Army, 177 F.Supp. 498 (D.C.1959), the following summary of the law was stated:

From the foregoing discussion the conclusion is inescapable that the modern American law of libel has adopted the so-called "single publication" rule; and, therefore, this principle must be deemed a part of the common law of the District of Columbia. In other words, it is the prevailing American doctrine that the publication of a book, periodical, or newspaper containing defamatory matter gives rise to but one cause of action for libel, which accrues at the time of the original publication, and that the statute of limitations runs from that date. It is no longer the law that every sale or delivery of a copy of the publication creates a new cause of action.

The American rule is supported not only by the great weight of authority, but is also far more. suited to contemporary life. To permit a separate suit to be brought in regard to the sale or delivery of every single copy of a modern publi-

cation would be inconceivable and intolerable. 177 F.Supp. at 502.

■ The single publication rule is suited to the contemporary publishing world where large numbers of copies of a book, newspaper, or magazine are circulated. It would substantially impair the administration of justice to allow separate actions on each individual copy and it would create the possibility of harassment, and multiple recoveries against defendants. Therefore, we hold under Tennessee law a plaintiff should be limited to a single cause of action based on the circulation of copies of an edition of a book, newspaper, or periodical.

■ The plaintiff here has filed only one action, and the dismissal by the trial court was based on a finding that the single action filed by the plaintiff was barred by the statute of limitations. The plaintiff's action, therefore, is barred only if the statutory period had elapsed prior to his filing the one action to which he is entitled under the single publication rule. That is, it is one matter to say that a plaintiff has only one cause of action on a widespread circulation of a libelous matter and another matter to decide when the action is barred by the statute of limitations.

Actions for libel are governed by the one-year statute of limitations established by T.C.A. § 28–304. The parties have stipulated that the book was released for sale October 16, 1969, and the first copy was sold October 27, 1969. The defendants-appellees have cited authority for holding that the single cause of action accrues no later than on the date of the first sale of a copy of the book. The action would not be barred, however, if the plaintiff were allowed to choose any single communication of the libelous material as the basis for his single cause of action and that view has some support. Dominiak v. National Enquirer, 439 Pa. 222, 266 A.2d 626, 42 A.L.R.3d 798 (1970); Note, The Single Publication Rule is Libel: A Fiction Misapplied, 62 Harv.L.Rev. 1041 (1949).

The general rule is that the first publication of an edition of a book, newspaper, or periodical in a single publication rule jurisdiction begins the statutory period for the single cause of action. Courts have stressed the view that the statute of limitations is designed to prevent stale claims and provide repose for potential defendants. As such, these decisions reason that a plaintiff should be barred if his claim is not advanced within one year after the book is made available to third parties. While the courts have disagreed as to whether an action accrued on the date of release for sale or on the date of the first sale, many courts have, in adopting the single publication rule approach, said that a single cause of action and a single statute of limitations period commencing at the first publication are complementary. Gregoire v. G. P. Putnam's Sons, supra; Ogden v. Association of the United States Army, supra.

One recent case, however, has carefully considered the alternative times at which the statutory period may commence. In Dominiak v. National Enquirer, supra, the Pennsylvania Supreme Court held that an action for libel filed on March 15, 1965, was not barred by the one-year statute of limitations where issues of the publication were delivered to New York City railroad terminals for shipment on March 10, 1964, delivered to New York retailers on March 12, 1964, and placed on sale at Philadelphia newsstands on March 14, 1964. Inasmuch as March 14, 1965 was a Sunday, it would have been timely to file suit on March 15, 1965, for an action accruing March 14, 1964, under the relevant Pennsylvania statute.

In Dominiak after determining that the Uniform Single Publication Act, which was enacted in Pennsylvania in 1953, did not require that the statutory period begin to run with the first publication, all members of the court agreed that the trial judge was in error when he found the action barred by the statute of limitations and dismissed the claim. In the majority

opinion and two concurring opinions, the court expressed three different standards for measuring the statutory period.

The majority opinion in *Dominiak* held that the

. . . plaintiff may choose any publication as the single publication which represents his single cause of action,

but that the plaintiff,

. . . may only recover damages that result from publications occurring within one year (assuming that is the applicable limitations period) of the date he chooses. 266 A.2d at 629.

One concurring opinion suggested the rule be,

. . . that the statute begins to run, at the earliest, from the time a publication first reaches the allegedly defamed individual's community. 266 A.2d at 630.

The other concurring opinion said that,

. . . the first publication of the alleged defamation in the state in which suit is brought should be taken as the single publication and so mark the date from which the statute runs. 266 A.2d at 631.

█ Statutes of limitations are looked upon by the courts with favor as statutes of repose. City of Knoxville v. Gervin, 169 Tenn. 532, 542, 89 S.W.2d 348 (1936). Such statutes are designed

. . . to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. Chase Securities Corp. v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L. Ed. 1628 (1945).

An action for libel presents unique factors to be analyzed with regard to the policies of a statute of limitations. A libel action involves evidence regarding a written statement and if the statement discusses events occurring years earlier, then the evidentiary problems are substantial whether the action is tried one year or several years after the matter is first published. According to the pleadings, the particular statement alleged to be defamatory in the case sub judice concerns an event which was said to have occurred over forty-three years ago. On the other hand, evidence regarding the extent of circulation of a publication and the injuries to the plaintiff will necessarily be limited to occurrences within the one-year period since the cause of action accrued. Therefore, the policy of avoiding stale claims is not seriously affected by the choice of the date at which a cause of action accrues.

There is no question but that a determination that the action accrues on any sale that the plaintiff chooses would seriously extend the liability of authors and publishers over a longer period of time. On the other hand, the problem with a "first publication" rule for statutes of limitations is that a person might refrain from suing or even be without knowledge of a publication after a limited distribution of a possibly libelous matter, and later be faced with wide circulation of the matter. Such danger is particularly acute for books, as opposed to newspapers or even periodicals, because interest in books is likely to continue for a longer time period. Likewise, pamphlets or circulars could be distributed in limited areas at one time and, later, the plaintiff's community could be flooded with such materials.

█ The most reasonable and satisfactory date to mark the beginning of the statutory period would be the first time a publication is distributed in the county where the action is brought. That standard, which describes the governmental subdivision approximating the defamed individual's community, will provide reasonable certainty for defendants, and from the standpoint of judicial administration, it will be easily comprehended and applied. Most importantly, that rule will

. . . also protect a defamed person against the impossibility of recovering damages for an extensive libelous publication which reaches into his hometown, the statutory period for suit having previously run by virtue of a prior publication so limited in scope or so far removed from his domicile that the publication was unknown to the defamed person or would not have justified suit even had it been known. 266 A.2d at 631.

■ Applying the above standard to the facts involved in the case at bar, the dismissal of the action must be reversed. There is nothing in the pleadings to indicate the date on which the book was first distributed in Obion County and it is, therefore, impossible to determine from the record whether the statutory period had expired when the action was filed in December, 1970.

Defendants, Memphis State University and Memphis State University Press, Inc., also raised the defense of sovereign immunity and the trial judge sustained the motion to dismiss and the special plea in abatement based on this ground.

Article I, Section 17 of the Tennessee Constitution provides as follows:

Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct.

Tennessee Code Annotated § 20–1702 provides that:

No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state . . . with a view to reach the state, its treasury, funds, or property, and all such suits shall be dismissed as to the state . . . on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state.

Memphis State University is a State Teachers College created and maintained under the provisions of T.C.A. § 49–3201. It is subject to the control and management of the Tennessee Board of Education, T.C.A. § 4–310(4), and its fiscal procedure is outlined in T.C.A. § 49–3215.

In Metropolitan Government v. Allen, 220 Tenn. 222, 415 S.W.2d 632, this Court said:

Sovereign immunity is a specific term limited in its application to the State and to the departments, commissions, boards, institutions and municipalities of the State. 220 Tenn. at 230, 415 S.W.2d at 635.

■ Memphis State University is an institution to which the doctrine of sovereign immunity applies and no statute authorizes this suit. Therefore, the trial judge was correct in sustaining the motion to dismiss filed by Memphis State University on the plea of govermental immunity.

In its sworn plea in abatement, defendant Memphis State University Press, Inc. said it,

is entitled to the defense of sovereign immunity from suit for the reason it is a nonprofit corporation wholly owned and controlled by Memphis State University, a state institution operated by the Board of Education of the State of Tennessee, and that it is used for the sole purpose of furthering the educational advantages of the university, which is a proper governmental function.

Although Memphis State University is an institution entitled to the defense of sovereign immunity, it is a separate question whether a publishing corporation which it owns and controls is immune from liability for the publication of a book alleged to be libelous. It is necessary to carefully consider the nature of the defendant entity asserting sovereign immunity, as well as the cause of action against which the doctrine is asserted to determine whether the sovereign immunity doctrine applies.

This Court has recognized that the creation of a corporation affects a state insti

tution's immunities. Immunities applicable to a county are lost when property becomes a part of a municipal corporation. Metropolitan Government v. Allen, 220 Tenn. 222, 230–231, 415 S.W.2d 632 (1967). Likewise, a business corporation is a distinct legal entity separate from the State, even though the State may be its sole stockholder, and, as such, is without certain immunities. White v. Nashville and Northwestern R. R. Co., 54 Tenn. 518, 546–547 (1872). In Hutchinson v. Western and Atlantic Railroad Co., 53 Tenn. 634 (1871), this Court said:

> The fact that the defendant is the property of the State of Georgia, which is the sole stockholder, makes it none the less a corporation, able to sue and liable to be sued as other corporations. Here the defendant as a corporation, and not as the State, is sued.
>
> \* \* \* \* \* \*
>
> By becoming owner or stockholder the State descends from its sovereign dignity to individuality so far as to place it upon an even footing of legal liability with other corporations of like character and purposes. 53 Tenn. at 637–638.

The fact that a State-controlled entity is incorporated does not, however, necessarily impose liability upon it. In University of Tennessee v. Peoples Bank, 157 Tenn. 87, 6 S.W.2d 328 (1928), this Court said that cases holding State corporations liable were

> founded, not upon the fact that the State had created a corporation as an agency for the possession and management of a portion of its property, but upon the nature and character of the corporation organized, as evidenced by its purpose and the kind and character of business transacted by it. 157 Tenn. at 93, 6 S.W.2d at 330.

■ Appellee, Memphis State University Press, Inc., contends that the corporation is used for the sole purpose of furthering the educational advantages of the University and, thus, performs a proper governmental function. Certainly education is a governmental function and this publishing company assists in the educational program. Publishing is not, however, generally perceived as a governmental function and the editing, marketing and similar activities relative to publications such as the book in this case have the distinct characteristics of a proprietary function. Where an educational institution separately incorporates its publishing activities and keeps such funds distinct from general university funds, it does not seem improper to consider the university immune and the publishing corporation subject to suit.

There is a proper reluctance to hold a governmental entity liable where no fund exists out of which satisfaction may be obtained. Reed v. Rhea County, 189 Tenn. 247, 225 S.W.2d 49 (1949). Here, however, the publishing activities are income-producing (though the income is not considered profit), and a fund separate from all State and University funds exists. In fact, a specific fund has been created by sales of the allegedly libelous book. Where the satisfaction of the claim does not invade a charitable institution's trust and where the activities involved are distinct from the central charitable activities of the university, this Court has refused to extend the doctrine of charitable immunity and allowed recovery. Gamble v. Vanderbilt University, 138 Tenn. 616, 620, 200 S. W. 510 (1917). Likewise, with a separate fund available, allowance of a recovery here will not undermine the concepts regarding governmental activities and resources which underlie the sovereign immunity doctrine. Moreover, sovereign immunity would create a particularly unjust result where the cause of action is based on libel, rather than negligence.

Therefore, it was error to dismiss the action against Memphis State University Press, Inc., on a plea of governmental immunity.

The action of the trial judge in sustaining the motion to dismiss filed by Memphis

State University is affirmed. The actions of the trial judge in sustaining the motion to dismiss and the plea in abatement filed by Memphis State University Press, Inc., and Paul J. Vanderwood are reversed and the cause remanded.

CHATTIN, HUMPHREYS and Mc-CANLESS, JJ., and WILSON, Special Justice, concur.