Sylvia **GREENHILL**,
Plaintiff/Appellant,

v.

Dr. Thomas **CARPENTER**, et al.,
Defendants/Appellees.

Court of Appeals of Tennessee,
Western Section, at Jackson.

July 1, 1986.

Application for Permission to Appeal
Denied by Supreme Court
Sept. 29, 1986.

A.C. Wharton, Jr. of Wharton & Wharton & Associates, Memphis, for plaintiff/appellant.

W.J. Michael Cody, Atty. Gen. & Reporter, Michael W. Catalano, Deputy Atty. Gen., William K. Tomlinson, Asst. Atty. Gen., Nashville, for defendants/appellees.

TOMLIN, Presiding Judge (W.S.)

Sylvia Greenhill (hereafter "plaintiff") brought a suit, sounding in both tort and contract, in the Circuit Court of Shelby County against the president, athletic director, the then head football coach of Memphis State University (now deceased), and against its Department of Athletics (hereafter "MSU defendants"). She sued in both her individual capacity and as administratrix of the estate of her son, Charles Greenhill, Jr. Plaintiff's tort claim is based on the alleged negligence on the part of the MSU defendants, resulting in the death of her son in an airplane crash. The contract claim is based on the alleged breach of a contractual agreement to properly insure his life. The MSU defendants filed a motion to dismiss on the grounds of lack of subject matter jurisdiction based on

sovereign immunity, pursuant to Rule 12.-02(1), T.R.C.P. The motion was granted.

By this appeal, plaintiff raises two issues: Did the trial court err (1) in dismissing plaintiff's action for lack of subject matter jurisdiction based on the doctrine of sovereign immunity, and (2) in ruling that it lacked subject matter jurisdiction over plaintiff's contract claim on the basis that such a claim could only be brought in Davidson County. We find no error and affirm.

In reviewing the granting of a motion to dismiss, the facts alleged in plaintiff's complaint must be accepted as true. *Sullivant v. Americana Homes, Inc.,* 605 S.W.2d 246, 249 (Tenn.App.), *permission to appeal denied,* (1980). In 1982, representatives of Memphis State University began recruiting young Greenhill to attend MSU and to play football. Plaintiff was concerned with her son's future and was involved in the negotiations. She inquired as to what efforts Memphis State University would make to insure her son's safety in all his activities as a member of its football team. She was assured by Head Coach Dockery, as well as by others, that he would be insured "twenty-four hours a day, on and off the field, as long as he is a student athlete." Partly because of this representation, she gave her consent for her minor son to sign a letter of intent. Greenhill ultimately entered Memphis State University and became a member of the football team.

In December, 1983 he accompanied Coach Dockery and others on a flight to Lawrenceburg, Tennessee in a private plane, piloted by an officer of the Highland Hundred Club, an MSU booster club. Dockery was to be a speaker at a banquet that evening. It is alleged that the coach desired to use this trip to recruit for the MSU athletic program. While attempting to land in Lawrenceburg, the plane crashed in bad weather, killing all on board.

In her complaint, plaintiff charged that the MSU defendants were negligently responsible for Greenhill's death due to their failure to insure safe travel arrangements for him, and too, that the MSU defendants breached their promise to obtain life insurance for him. The complaint also charged fraud, alleging that the MSU defendants fraudulently represented that they would insure his life. The complaint also alleged that most, if not all, of the funding for the Department of Athletics of Memphis State University comes from sources other than the state of Tennessee.

## I. THE ISSUE OF SOVEREIGN IMMUNITY.

Article I, § 17 of the Tennessee Constitution provides in part that "suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." This section has been interpreted as a grant of sovereign immunity to the state, and, accordingly, no suit against the State may be sustained absent express authorization from the Legislature. *Coffman v. City of Pulaski,* 220 Tenn. 642, 422 S.W.2d 429, (1967), *reh'g denied,* (1968).

Tenn.Code Ann. § 20–13–102(a) provides:
No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds, or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state.

In the case of *State ex rel. Allen v. Cook,* 171 Tenn. 605, 106 S.W.2d 858, 860 (1937), the Court said:
Article 1, Section 17, of the Constitution delegating to the Legislature the power to authorize suits against the state, being in derogation of the state's inherent exemption from suit, must itself be strictly construed; hence legislation authorizing suits against the state must strictly pursue the constitutional requirements, and be so plain, clear, and unmistakable in its provisions as to the manner and form in which such suits may be brought as to leave nothing to surmise or conjecture.

In at least two cases our Supreme Court has expressly held that Memphis State University is a state institution to which the doctrine of sovereign immunity applies. *Dunn v. W.F. Jameson & Sons, Inc.*, 569 S.W.2d 799 (Tenn.1978); *Applewhite v. Memphis State University*, 495 S.W.2d 190 (Tenn.1973).

Furthermore, when officials of a branch of the state such as Memphis State University are acting in their official capacities, they also are entitled to sovereign immunity. "A suit against a state official in his official capacity is a 'suit against the state.'" *Cox v. State*, 217 Tenn. 644, 399 S.W.2d 776, 778 (1965) (citations omitted). Since it is undisputed that plaintiff is suing the MSU defendants in their official capacities, they are protected by the doctrine of sovereign immunity as well.

Plaintiff contends that the activities involved which allegedly caused her damages, both in tort and contract, "are not necessarily governmental," and that the funds from which compensation is sought are not exclusively state funds. In support of her first contention she relies heavily upon *Applewhite v. Memphis State University, supra.* We are of the opinion that her reliance thereon is misplaced. In *Applewhite*, plaintiff sued Memphis State University, Memphis State University Press, Inc., and the author of a book for libel. MSU and MSU Press, Inc. raised the defense of sovereign immunity, which defense was sustained by the trial court. As to MSU itself, our Supreme Court, noting that MSU was created and maintained pursuant to statute and was subject to control of and management by the Tennessee Board of Education, stated unequivocally that "Memphis State University is an institution to which the doctrine of sovereign immunity applies and no statute authorizes this suit." *Id.* at 198. Relative to Memphis State University Press, Inc., however, the Court said, "it is a separate question whether a publishing corporation which it owns and controls is immune from liability for the publication of a book alleged to be libelous." *Id.* at 196.

The Court then concluded that MSU Press was not entitled to be dismissed on a plea of governmental immunity, stating:

> Certainly education is a governmental function and this publishing company assists in the educational program. Publishing is not, however, generally perceived as a governmental function and the editing, marketing and similar activities relative to publications such as the book in this case have the distinct characteristics of a proprietary function. When an educational institution separately incorporates its publishing activities and keeps such funds distinct from general university funds, it does not seem improper to consider the university immune and the publishing corporation subject to suit.

*Id.* at 197.

An analysis of the Court's holding in *Applewhite* clearly indicates it focused on the status of MSU Press as a separate corporation, a legal entity separate and apart from Memphis State University. In the case now under consideration the plaintiff seeks damages from the university itself, through its officers and agents and from one of the university's several departments. There is no allegation in the complaint that the Department of Athletics is a separate legal entity so as to equate it to MSU Press, Inc., as in *Applewhite*.

Furthermore, this Court can take judicial notice of the fact that for well over one hundred years athletic programs have been an integral part of the educational process in colleges and universities throughout this country, not only in football, but baseball, basketball, and other sports too numerous to mention. The development of a student's physical body, team work, and sportsmanship have all been part of the college and university educational process, notwithstanding the fact that in recent years big-time college athletics have at times taken on a tinge of commercialism.

Next, plaintiff contends that the doctrine of sovereign immunity is not applicable be-

cause her suit, if successful, would not be satisfied from public funds. In that regard she contends that the MSU Athletic Department possesses its own separate funds acquired from private, rather than public, sources. Thus, plaintiff argues, since the purpose of the doctrine of sovereign immunity is to protect the public treasury, the doctrine would not be offended in this case by allowing her suit to reach the separate and private funds of the Athletic Department of Memphis State University.

It is not questioned that, as a matter of fact, much of the operating funds of the MSU Department of Athletics come from sources other than tax revenues. Defendants contend, however, and the trial court so held, that the funds received by them from nonpublic sources were nevertheless public funds for the purposes of sovereign immunity. The Appropriations Acts for the years pertinent to this lawsuit provide as follows:

> BE IT FURTHER ENACTED, That all departmental revenue of every kind, as hereinafter defined, collected by any department, institution, office, or agency, in the course of its operations for its own use, are hereby appropriated to it in addition to the specific appropriations made by this act.... For the purpose of this section "Departmental Revenues" are defined as (1) earnings or charges for goods or services; (2) donations, contributions or participation by political subdivisions, foundations, corporations, firms or persons.

Public Acts 1982, Chapter 916, Section 4; Public Acts 1983, Chapter 403, Section 4; Public Acts 1984, Chapter 1002, Section 4. The Appropriations Acts also provide:

> BE IT FURTHER ENACTED, That except where sovereign immunity has been or shall hereafter be expressly waived by the General Assembly, all appropriations of state revenues and departmental revenues made in this Act and in prior Acts to the state, its departments, agencies, boards, educational Institutions, instrumentalities, and incorporated entities performing the state's governmental func-

tions shall be state funds and shall be protected by the state's sovereign immunity from every court's judgment, decree, attachment or other legal process; provided, however, that any statutory or other provision authorizing an agency, board, or entity to sue and be sued shall not constitute a waiver of sovereign immunity.

Public Acts 1982, Chapter 916, Section 24; Public Acts 1983, Chapter 403, Section 24; Public Acts 1984, Chapter 1002, Section 24.

■ In our opinion, the language in the above-quoted sections of the Appropriations Acts makes it clear that private contributions, as well as revenues generated by a department of a state educational institution, become state funds and are thus protected by the sovereign immunity of a state. If a plaintiff were to be permitted to sift through the coffers of a state institution in order to discover which of its funds originated from private sources and which did not, the very purpose of sovereign immunity would be defeated. T.C.A. § 20-13-102(a) bars not only suits with a view to reach state funds, but also suits "with a view to reach the state" itself.

Plaintiff's reliance upon *Hopkins v. Clemson Agricultural College*, 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890 (1911), and *Gamble v. Vanderbilt University*, 138 Tenn. 616, 200 S.W. 510 (1918), is likewise misplaced. *Hopkins* involved a state-controlled corporation, and *Gamble* involved a private educational institution.

## II. DISMISSAL OF PLAINTIFF'S CONTRACT CLAIM.

■ T.C.A. 29-10-101(a)(1) provides:
The several circuit and chancery courts of Davidson County, Tennessee, shall, subject to appeal as provided by law, have jurisdiction to enter judgments against the state founded upon any *express* contract or breach thereof with the state and shall determine all questions of fact involved without the intervention of a jury, subject to the limitations of this chapter. (emphasis added).

Although repealed as of January 1, 1985, T.C.A. § 29–10–101 was in full force and effect when plaintiff's suit was filed in Shelby County in December, 1984. Although plaintiff's position below is not clear, on appeal she contends that the contract allegedly breached was an implied contract, rather than an express contract, and thus not covered by the above-stated Code section. We agree. Our Supreme Court has defined express contracts as "written agreements stating the terms agreed upon by the parties." *V.L. Nicholson Co. v. Transcon Investment And Financial Ltd.*, 595 S.W.2d 474 (Tenn.1980). Our review of the complaint reveals no allegation of a written agreement.

A determination that plaintiff is not suing on an express contract leaves her with no authority upon which to sue the state. As already noted, Article I, § 17, of the Tennessee Constitution provides that suits against the state may only be brought "in such manner and in such courts as the Legislature may by law direct." The above-cited Code section grants permission to bring suit only on express contracts. Plaintiff has cited no statute authorizing a suit against the state on an implied contract, and our research has found none. *See Carlson v. Highter*, 612 F.Supp. 603 (E.D.Tenn.1985). We conclude that the trial court properly dismissed plaintiff's suit on the grounds of sovereign immunity.

Accordingly, the judgment of the trial court is affirmed. Costs in this cause are taxed to plaintiff, for which execution may issue, if necessary.

FARMER, J., and MATHERNE, Special Judge, concur.