IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION AT KNOXVILLE

FILED

June 5, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| DEBORAH HENDRIX, | ) | UNICOI CIRCUIT |
| | ) | |
| Plaintiff/Appellant | ) | NO. 03A01-9701-CV-00032 |
| | ) | |
| v. | ) | HON. G. RICHARD JOHNSON, |
| | ) | JUDGE |
| FIRST TENNESSEE NATIONAL | ) | |
| CORPORATION d/b/a FIRST | ) | |
| TENNESSEE BANK, | ) | |
| | ) | ) |
| Defendant/Appellee | ) | AFFIRMED |

James S. Pate, Erwin, for Appellant.
Steven C. Rose, West & Rose, Kingsport, for Appellee.


**O P I N I O N**

INMAN, Senior Judge

This action for damages for defamation and outrageous conduct was dismissed on motion for summary judgment. The plaintiff presents the propriety of the dismissal for appellate review, which is *de novo* on the record with no presumption of correctness. *Johnson v. EMPE, Inc.*, 837 S.W.2d 62, 68 (Tenn. App. 1992).

The plaintiff alleged that the defendant bank held a purchase money mortgage on his residence which required a concomitant escrow account, the funds from which, *inter alia*, were used to pay insurance premiums. Her efforts to discover the identity of the insurance carrier were unfruitful for several weeks, but she was advised in February 1994 of the name of the company. In May 1994 the insurance company notified her that its policy was canceled for non-payment of premiums. Whereupon, the plaintiff requested an accounting of her escrowed funds. She was given a computer-generated document on which appeared, "This woman is crazy. Please refer to supervisor if she calls."

The plaintiff alleged that this statement was defamatory and constituted

outrageous conduct.

The defendant filed its answer admitting that the plaintiff had received a notice of cancellation of the policy, but that the notice was inadvertent because directed to the wrong policy. It admitted the criticized notation but denied the requisite publication, alleging that the communication was privileged and limited to its employees.

The defendant then moved for summary judgment, alleging that "the communication of which the plaintiff complained was an internal and privileged communication" and "if a dissemination of the privileged communication was made, it was made only by the plaintiff herself."

The trial judge, in granting the motion, found there was no publication of the alleged defamatory words.

The notation was made by Lisa Vanderwerf, a supervisor at the bank. It was motivated by the admittedly persistent, screaming demands of the plaintiff relating to the insurance policy; when emotions cooled, the notation "this woman is crazy" was removed.

Other than Ms. Vanderwerf, the only persons who had access to the computer record were the servicing personnel in the mortgage division of the defendant. The record reveals that only Ms. Vanderwerf and Becky Barrett, who was manager of the Insurance and Tax Department, saw the statement.[1]

An essential element of any defamation claim is that the allegedly defamatory statement be "published." *See Applewhite v. Memphis State University*, 495 S.W.2d 190 (Tenn. 1973). In the defamation context, publication is the "communication of libelous matter to a third person." *Applewhite*, 495 S.W.2d at 192-93; *Quality Auto Parts, Inc. v. Bluff City Buick*, 876 S.W.2d 818, 821 (Tenn. 1994).

Intra-corporate communication among employees of the corporation does not constitute "publication" to third persons for defamation purposes. In *Freeman v. Dayton Scale Company*, 19 S.W.2d 255 (Tenn. 1929), an agent of the defendant

---

[1]The plaintiff showed the statement to other bank employees.

corporation included an allegedly defamatory statement in a letter to the plaintiff's attorney which had been dictated to a stenographer. Plaintiff alleged that the communication to the stenographer constituted a "publication" of the defamatory statement. The court disagreed: "The more liberal rule, and the one which seemingly has the support of the weight of modern authority, is that, where the communication is made to a servant or business associate in the ordinary and natural course of business, there is no actionable libel." *Freeman,* 19 S.W.2d at 257 (citation omitted).

This principle was reaffirmed in *Woods v. Helmi*, 758 S.W.2d 219 (Tenn. App. 1988). In that case, a certified registered nurse anesthetist sued the employer hospital for libel in connection with certain internal memoranda written by hospital administrators as a result of an apparently problematic operation which took place at the hospital. The memoranda concerned plaintiff's job performance and was circulated only among the administration officials, some of whom were responsible for the anesthesiology department and others were administrators of the hospital's employee relations department. Relying on the *Freeman* decision, the trial court granted summary judgment in favor of the defendant. *Woods,* 758 S.W.2d at 221-22.

This Court affirmed. We held: "We interpret *Freeman* and its progeny to mean that communication among agents of the same corporation made within the scope and course of their employment relative to duties performed for that corporation are not to be considered as statements communicated or publicized to third persons." *Id.* at 223.

The undisputed record in this case brings the circumstances surrounding the allegedly defamatory statement within the *Freeman-Woods* principle regarding intra-corporate communications. The statement was not "published" to any third person outside appellee's business. The only persons who had access to the notation or could conceivably have read it were servicing personnel in the bank's mortgage department.

Appellant argues that the intra-corporate communications privilege applies

only where the employees to whom an allegedly defamatory statement is made are in a "need to know" position.  This argument is generated by dicta in *Woods*:

> While many of the cases denying the existence of a publication speak in terms of corporations communicating to or with itself, it seems to this Court that more essential to the issue is the concept of "need to know" with the communication flowing through the proper chain of command, particularly in employee performance reviews or disciplinary action.  It could readily be argued that the concept of intra-corporate communications would not apply if, in the case of a review by corporate superiors of the alleged misconduct of a branch manager, the circumstances surrounding the misconduct were communicated also to the corporation's truck driver or janitor, who obviously would not be in the "need to know" pipeline.

*Woods, 758 S.W.2d at 223.*

While we think the "need to know" argument has merit and is an exception to the intra-corporate rule, there is no evidence that the statement was disseminated to or read by any corporate employee who had no "need to know."  At a maximum, it was seen by only four employees, none of whom, as far as the record reveals, lacked a need to know.

In light of our holding with respect to the non-publication of the allegedly defamatory statement, the issue of whether the bank was guilty of outrageous conduct is essentially moot.  The point need not be labored, because the statement authored by Ms. Vanderwerf when she vented the frustration occasioned by the plaintiff's screaming, persistent demands does not rise to the level of outrageous conduct.  Aside from the fact that the statement is not, *prima facie*, defamatory,[2] it obviously cannot to characterized as "not tolerated in civilized society."  *See Dunn v. Moto Photo, Inc.*, 828 S.W.2d 747, 753 (Tenn. App. 1991).

The judgment is affirmed at the costs of the appellant.

_____
William H. Inman, Senior Judge

---

[2]Dicta, because not pleaded or argued, but mentioned lest it be assumed otherwise.

CONCUR:

_____
Don T. McMurray, Judge


_____
Charles D. Susano, Jr., Judge