IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2026 Session

## CHICAGO TITLE INSURANCE COMPANY v. CLOSED NASHVILLE, LLC ET AL.

### Appeal from the Chancery Court for Williamson County
### No. 24CV-53427      Deana C. Hood, Chancellor

_____

### No. M2025-01214-COA-R10-CV
_____

Mortgage companies maintain that the Tennessee Housing Development Agency ("THDA"), which services mortgages through the trade name of Volunteer Mortgage Loan Servicing ("VMLS"), is liable for monetary losses following the use of an improper bank account number. THDA and VMLS contend that they are protected by sovereign immunity and filed a motion to dismiss. The trial court denied the motion because it found THDA was engaged in commercial activities. THDA and VMLS appealed. We reverse.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Chancery Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which CARMA DENNIS MCGEE and JEFFREY USMAN, JJ., joined.

Jonathan Skrmetti, Attorney General and Reporter, J. Matthew Rice, Solicitor General, Bradford D. Telfeyan, Assistant Attorney General, and Michael N. Wennerland, Assistant Attorney General, for the appellants, Tennessee Housing Development Authority and Volunteer Mortgage Loan Servicing.

Michael K. Atkins and Nicole A. Clark, Knoxville, Tennessee, for the appellee, Closed Nashville, LLC.

Peter C. Robison and Alexander N. Daichman, Nashville, Tennessee, for the appellee, Watauga Title & Escrow Co., LLC.

Phillip P. Welty, Nashville, Tennessee, for the appellee, Old Republic National Title Insurance Company.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

Edward Colton Mansfield and Nicole Courtney Cook ("Sellers") purchased a home on Barretts Ridge Drive in Murfreesboro, Tennessee. They financed their purchase of the home through a mortgage, and a first deed of trust in favor of First Community Mortgage, Inc, with a subordinate deed of trust executed in favor of the Tennessee Housing Development Agency ("THDA"). On April 5, 2023, the Sellers sold the home to Wenona Dotson by warranty deed. Closed Nashville LLC ("Closed"), an agent of Chicago Title Insurance Company ("CTIC"), acted as the title agent conducting the closing. Watauga Title ("Watauga"), an agent of Old Republic Title Insurance Company ("Old Republic"), requested wiring payoff instructions from THDA and forwarded them to Closed. Closed wired the funds pursuant to the instructions, which were inaccurate. When they did not receive their funds, THDA and VMLS[1] (the trade name through which THDA services mortgages) threatened foreclosure. CTIC, the issuer of the owner's policy of title insurance on the home, paid the claim to prevent the foreclosure.

On April 4, 2024, CTIC filed a complaint for damages in Williamson County Chancery Court, alleging that Closed was required to indemnify it for the payments CTIC made pursuant to a title insurance policy it had issued. Closed filed an answer and a third-party complaint against THDA, VMLS, Watauga, and Old Republic. Closed alleged that the third-party defendants "were negligent in failing to have proper cyber security measures in place to prevent a security breach with their electronic fund wiring system which caused Closed to send the electronic wiring funds to an inaccurate bank account as directed by the Third-Party Defendants." The third-party complaint also alleged "that governmental immunity has been removed from Third-Party Defendants VMLS and THDA in this matter pursuant to Tenn. Code Ann. §§ 29-20-203, 204, and 205." These statutory provisions are part of the Governmental Tort Liability Act ("GTLA"), Tenn. Code Ann. §§ 29-20-102-to-408.

Old Republic filed an answer blaming the others, and Watauga blamed THDA and VMLS. THDA and VMLS filed a motion to dismiss under Tenn. R. Civ. P. § 12.02(1) and (6), alleging that there was no subject matter jurisdiction because they were protected by sovereign immunity. They argued that no statute abrogated their immunity, that Tenn. Code Ann. § 20-13-102(a)[2] codified the doctrine of sovereign immunity, and that the GTLA

---

[1] The parties treat VMLS as a part of THDA. There being no evidence to the contrary in the record, we, too, will treat VMLS as a part of THDA.

[2] Tennessee Code Annotated section 20-13-102(a) states as follows:

> No court in the state shall have any power, jurisdiction or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a

applied to local, not state, entities. Watauga replied that THDA could "sue and be sued" under Tenn. Code Ann. § 13-23-115(24) and that it was engaged in commercial activity, thus removing its sovereign immunity, citing *Thacker v. Tennessee Valley Authority*, 587 U.S. 218 (2019). Closed filed a similar response.

In May 2025, the chancery court entered an order denying the motion to dismiss. The chancery court relied on *Thacker* in determining that the "sue and be sued" provision and the agency's engagement in commercial activity removed THDA's sovereign immunity. In a motion for reconsideration, THDA and VMLS asserted that it was error to rely on *Thacker*. They also pointed out that Tenn. Code Ann. § 9-1-103(a) provides that a "sue and be sued" clause does not waive sovereign immunity. The trial court denied the motion.

THDA and VMLS filed an application for an extraordinary appeal pursuant to Tenn. R. App. P. 10, which this Court granted. The issue on appeal is whether the chancery court erred in holding that Tenn. Code Ann. § 13-23-115(24) waived Tennessee Housing Development Agency's and Volunteer Mortgage Loan Servicing's sovereign immunity.

STANDARD OF REVIEW

"Following the granting of an application for an interlocutory or extraordinary appeal, the standard of review is the same standard that would have been applied to the issue(s) in an appeal as of right." *Peck v. Tanner*, 181 S.W.3d 262, 265 (Tenn. 2005). "A trial court's denial of a motion to dismiss is a question of law, which this Court reviews de novo with no presumption of correctness." *Heaton v. Mathes*, No. E2019-00493-COA-R9-CV, 2020 WL 1652571, at *3 (Tenn. Ct. App. Apr. 3, 2020). The appellate court also takes the allegations of fact in the complaint as true. *Id*.

ANALYSIS

THDA is "a political subdivision and instrumentality of the state." Tenn. Code Ann. § 13-23-104. Its purpose is "to promote the production of more affordable new housing units for very low, low and moderate income individuals and families in the state, to promote the preservation and rehabilitation of existing housing units for such persons and to bring greater stability to the residential construction industry and related industries." Tenn. Code Ann. § 13-23-102. Among the agency's powers are to "[s]ue and be sued in its own name, plead and be impleaded." Tenn. Code Ann. § 13-23-115(24).

---

view to reach the state, its treasury, funds or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea or demurrer of the law officer of the state, or counsel employed for the state.

Watauga and Closed maintain that "sue and be sued" language waives sovereign immunity and rely on *Thacker v. Tennessee Valley Authority*, 587 U.S. 218 (2019). In that case, Congress allowed the Tennessee Valley Authority ("TVA") to "sue and be sued in its corporate name." *Id*. at 219-220 (quoting 16 U.S.C. § 831c(b)). The Court observed that "[w]ithout such a clause, the TVA (as an entity of the Federal Government) would have enjoyed sovereign immunity from suit. By instead providing that the TVA could 'be sued,' Congress waived at least some of the corporation's immunity. (Just how much is the question here.)" *Id*. at 221(citation omitted). The Court further explained:

> Those words "in their usual and ordinary sense," the Court noted, "embrace all civil process incident to the commencement or continuance of legal proceedings." [*Fed. Housing Adm. v.] Burr,* 309 U.S. 242, [at] 245–246, 60 S. Ct. 488 [(1940)]. And Congress generally "intend[s] the full consequences of what it sa[ys]"—even if "inconvenient, costly, and inefficient." *Id*., at 249, 60 S. Ct. 488 (quotation modified). But not quite always, the Court continued. And when not—when Congress meant to use the words "sue and be sued" in a more "narrow sense"—a court should recognize "an implied restriction." *Id*., at 245, 60 S. Ct. 488. In particular, *Burr* stated, a court should take that route if one of the following circumstances is "clearly shown": either the "type[ ] of suit [at issue is] not consistent with the statutory or constitutional scheme" or the restriction is "necessary to avoid grave interference with the performance of a governmental function." *Ibid*.

*Thacker*, 586 U.S. at 224. The *Thacker* court concluded:

> So to determine if the TVA has immunity here, the court on remand must first decide whether the conduct alleged to be negligent is governmental or commercial in nature. For the reasons given above, if the conduct is commercial—the kind of thing any power company might do—the TVA cannot invoke sovereign immunity. In that event, the TVA's sue-and-be-sued clause renders it liable to the same extent as a private party.

*Id*. at 229. Watauga and Closed liken THDA's and VMLS's activities to commercial activity.

Federal law can be instructive, but it is not binding on this Court when interpreting state law. Does the language "sue and be sued" waive sovereign immunity under Tennessee law? "Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." TENN. CONST. art. I, § 17. Thus, "'governmental entities may prescribe the terms and conditions under which they consent to be sued, . . . including when, in what forum, and in what manner suit may be brought.'" *Sneed v. City of Red Bank, Tenn*., 459 S.W.3d 17, 23 (Tenn. 2014) (quoting *Cruse v. City of Columbia*, 922 S.W.2d 492, 495 (Tenn. 1996)). A "waiver of sovereign immunity must be explicit, not implicit."

- 4 -

*Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 853 (Tenn. 2008). "[C]ourts will interpret a statute as waiving the State's sovereign immunity only if the legislation waives sovereign immunity 'in plain, clear and unmistakable' terms." *Crouch v. Univ. of Tenn.*, No. E2023-00023-COA-R3-CV, 2024 WL 2319652, at *3 (Tenn. Ct. App. May 22, 2024) (quoting *Smith v. Tenn. Nat'l Guard*, 551 S.W.3d 702, 709 (Tenn. 2018)). Those "plain, clear and unmistakable terms" must include the "manner" in which the claim is to be brought. Tenn. Const. art. I, § 17.

In *Harakas Construction Inc. v. Metropolitan Government of Nashville and Davidson County*, 561 S.W.3d 910 (Tenn. Ct. App. 2018), the Court found that the Metropolitan Charter's provision allowing Metro Nashville to sue and be sued did not show "an intent to consent to be sued for unjust enrichment and promissory estoppel." *Id.* at 926; *see also Austin v. City of Memphis*, 684 S.W.2d 624, 638 (Tenn. Ct. App. 1984) (concluding that sue and be sued language in the Chickasaw Basin Authority statute was not a waiver of sovereign immunity). In *Crouch,* this Court found that sue and be sued language was insufficient to waive sovereign immunity when read *in pari materia* with Tenn. Code Ann. § 20-13-102(b), which stated, "No statutory or other provision authorizing the University of Tennessee and its board of trustees to sue and be sued shall constitute a waiver of sovereign immunity." *Crouch*, 2024 WL 2319652, at *3; *see also Constantin v. Univ. of Tenn.*, No. 86-7-II, 1986 WL 7619, at *2 (Tenn. Ct. App. July 9, 1986). Based on these authorities, sue and be sued language, by itself or combined with a prohibition such as Tenn. Code Ann. § 20-13-102(b), does not waive sovereign immunity in Tennessee.[3]

THDA and VMLS point to Tenn. Code Ann. § 9-1-103(a), which states:

> Except to the extent that sovereign immunity is expressly waived by the general assembly, all appropriations of state revenues and departmental revenues previously and hereafter made to the state, its departments, agencies, boards, educational institutions, instrumentalities, and incorporated entities performing the state's governmental functions shall be state funds and shall be protected by the state's sovereign immunity

---

[3] Of course, it almost goes without saying that the General Assembly knows how to waive sovereign immunity if it so desires. For example, if THDA defaults on any bonds or notes, a trustee is appointed pursuant to Tenn. Code Ann. § 13-23-123(a). The trustee can enforce the rights of the bondholders and noteholders against the agency. Tenn. Code Ann. § 13-23-123(b)(1)-(5). Tennessee Code Annotated section 13-23-123(e) states,

> The circuit or chancery court shall have jurisdiction of any suit, action or proceeding instituted on behalf of the bondholders or noteholders by such trustee or any trustee appointed and acting in conformity with § 13-23-120(i). The venue of any such suit, action or proceeding shall be laid in Davidson County.

The language in Tenn. Code Ann. § 13-23-123 is unmistakably a waiver of sovereign immunity.

from every court's judgment, decree, attachment, or other legal process; provided, however, that any law authorizing an agency, board, or entity to sue or be sued shall not constitute a waiver of sovereign immunity.

THDA and VMLS maintain that Tenn. Code Ann. § 9-1-103 shuts the door on any attempt to claim that sovereign immunity was waived. The statute definitively states that "any law authorizing an agency, board, or entity to sue or be sued shall not constitute a waiver of sovereign immunity." Indeed, it is very similar to the statutory language of Tenn. Code Ann. § 20-13-102(b) examined in *Crouch* and *Constantin*.

Closed does not believe that the door is totally shut, because the protection of sovereign immunity under Tenn. Code Ann. § 9-1-103(a) is for "incorporated entities performing the state's governmental functions." THDA and its affiliated VMLS, according to Closed, do not perform governmental functions but rather engage in commercial activities and are, therefore, not protected by sovereign immunity. But THDA is not like a water department or an electric power department. It is not even like Memphis State University Press, Inc. in *Applewhite v. Memphis State University*, 495 S.W.2d 190 (Tenn. 1973). Memphis State University Press, Inc., was separately incorporated by the University. *Id.* at 197. Its funds were held distinct from the University. *Id*. There was no evidence provided that it received any state appropriations. *Id*.

In the instant case, THDA is a corporation created by the legislature. *West v. Tenn. Hou. Dev. Agency*, 512 S.W.2d 275, 277 (Tenn. 1974). "The fact that a State-controlled entity is incorporated does not, however, necessarily impose liability upon it." *Applewhite*, 495 S.W.2d at 197. Our Supreme Court has observed:

that cases holding State corporations liable were "founded, not upon the fact that the State had created a corporation as an agency for the possession and management of a portion of its property, but upon the nature and character of the corporation organized, as evidenced by its purpose and the kind and character of business transacted by it."

*Id.* (quoting *Univ. of Tenn. v. Peoples Bank*, 6 S.W.2d 328, 330 (Tenn. 1928)).

THDA, by statute, is,

a political subdivision and instrumentality of the state, [that] shall be deemed to be acting in all respects for the benefit of the people of the state in the performance of essential public functions and shall be deemed to be serving a public purpose and improving and otherwise promoting the health, welfare, and prosperity of the people of the state, and that the Tennessee housing development agency shall be empowered to act on behalf of the state and its people in serving this public purpose for the benefit of the general public.

Tenn. Code Ann. § 13-23-104; *see also* Tenn. Code Ann. §§ 13-23-126 (authority to accept appropriations and other funds) and 127 (tax exemption). THDA is to promote and enable housing for "very low, low and moderate income individuals and families." Tenn. Code Ann. § 12-23-102. It is treated as a state agency under the appropriations act. 2025 Tenn. Pub. Acts, ch. 530 §§ 1 and 4. Its funds are made up of state revenues, appropriated in 2025 Tenn. Pub. Acts, ch. 530, § 1, and department revenues, including federal aid, appropriated in 2025 Tenn. Pub. Acts, ch. 530, § 4, which is labeled "Departmental Revenues" and states:

> All departmental revenues of every kind, as hereinafter defined, collected by any department, institution, office, or agency, in the course of its operations, for its own use, are hereby appropriated to it in addition to the specific appropriations made by this act, unless otherwise provided in this act or other provisions of law. Federal aid funds granted to the state for the use of or to be administered by any department, institution, or agency, are likewise appropriated. For the purpose of this section "departmental revenues" are defined as (1) earnings or charges for goods and services; (2) donations, contributions or participation by political subdivisions, foundations, corporations firms or persons; (3) certain state revenues which for budgetary purposes, are treated as departmental revenues under the provisions of this section, unless otherwise provided in this act or other provisions of law.

All appropriations are protected by the state's sovereign immunity, as stated in 2025 Tenn. Pub. Acts, ch. 530, § 25, which references Tenn. Code Ann. § 9-1-103(a). The funds held by THDA, a state agency, are held in a sovereign capacity, unlike the bank property in *Univ. of Tenn. v. People's Bank*, 6 S.W.2d at 330, or the railroad company in *White v. Nashville and Northwestern Railroad Co.*, 54 Tenn. 518, 546-47 (1872) ("In becoming a common carrier, or a corporator, or partner in a railway company, the State has sunk the right and dignity of the sovereign to a level with those of the citizen.")

In sum, we find that:

1. Sue and be sued language is insufficient by itself to show consent to be sued because it does not indicate the manner in which the THDA is to be sued.
2. The language "provided, however, that any law authorizing an agency, board, or entity to sue or be sued shall not constitute a waiver of sovereign immunity," found in Tenn. Code Ann. § 9-1-103(a) protects all appropriations and provides for sovereign immunity for all of THDA's funds. The appropriations act reinforces this statutory interpretation.
3. The language "incorporated entities performing the state's governmental functions," in Tenn. Code Ann. § 9-1-103(a) does not enable the third-party

plaintiffs to reach the funds of THDA, because THDA is a legislatively-created entity that performs state governmental functions prescribed by statute regarding aid to low-income home buyers. The statutory scheme shows that THDA is not just another actor in the mortgage business – it survives on state appropriations, Tenn. Code Ann. § 13-23-126(a) and 2025 Tenn. Pub. Acts, ch. 530; it is tax exempt, Tenn. Code Ann. § 13-23-127; it is governed by state officials and state appointees, Tenn. Code Ann. §§ 13-23-106 and 107; and, it has a very specific mission and duties, 13-23-102 and 115-118.

4. Our decision does not prevent THDA from being sued in the Tennessee Claims Commission under any of the categories listed therein.

CONCLUSION

The motion to dismiss is granted. The judgment of the trial court is reversed. Costs of this appeal are assessed against the appellees, Closed Nashville, LLC and Watauga Title and Escrow Co. LLC, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE