IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 7, 2003 Session

## ALEXANDER C. WELLS v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
**No. 99002107**

_____

**No. M2002-01958-COA-R3-CV - Filed August 8, 2003**

_____

A tenured professor successfully challenged his dismissal through a review in the Chancery Court of Davidson County. Subsequently he filed a claim against the state in the Claims Commission for breach of contract. The Commission dismissed the claim on jurisdictional grounds. We affirm the conclusion that the claim was not based on a "written contract."

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellant, Alexander C. Wells.

Paul G. Summers, Attorney General & Reporter and Kae Carpenter Todd, Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.

Alexander C. Wells, a tenured professor at Tennessee State University, was charged with sexual harassment and dismissed by the University. In review in the Chancery Court of Davidson County, the court found a lack of clear and convincing evidence to support the termination and reversed the University's action. The Supreme Court of Tennessee affirmed.[1] The question of back pay and costs was not raised in the chancery action until Mr. Wells made a motion for back pay while the case was on appeal. The chancellor denied the motion.

_____

[1] _Wells v. Tennessee Bd. of Regents_, 9 S.W.3d 779 (Tenn. 1999).

Mr. Wells then filed a claim in the Claims Commission for back pay, attorney's fees and litigation costs. He invoked the Claims Commission's jurisdiction under Tenn. Code Ann. § 9-8-307(a)(1)(L): "Actions for breach of a written contract between the claimant and the state which was executed by one (1) or more state officers or employees with authority to execute the contract . . . ." At the close of the claimant's proof, the Commissioner dismissed the claim because Mr. Wells did not prove the existence of the written contract.

## II.
### JURISDICTION OF THE CLAIMS COMMISSION

Suits against the state may only be brought in such manner and in such courts as the legislature may by law direct. *Greenhill v. Carpenter*, 718 S.W.2d 268 (Tenn. Ct. App. 1986). Although our courts have traditionally held that a statute allowing the state to be sued must be strictly construed, in 1985 the Legislature amended the Claims Commission Act to provide: "It is the intent of the General Assembly that the jurisdiction of the Claims Commission be liberally construed to implement the remedial purposes of this legislation." Tenn. Code Ann. § 9-8-307(a)(3); *see also Stewart v. State*, 33 S.W.3d 785 (Tenn. 2000).

> Accordingly, when deciding whether a claim is within the proper statutory scope of the Commission's jurisdiction to hear and decide claims against the State of Tennessee, we will give a liberal construction in favor of jurisdiction, but only so long as (1) the particular grant of jurisdiction is ambiguous and admits of several constructions, and (2) the "most favorable view in support of the petitioner's claim" is not clearly contrary to the statutory language used by the General Assembly. *Cf. Northland Ins. Co. v. State*, 33 S.W.3d 727, 730 (Tenn. 2000)("The statute's liberal construction mandate allows courts to more broadly and expansively interpret the concepts and provisions within its text."). Furthermore, because issues of statutory construction are questions of law, *see Wakefield v. Crawley*, 6 S.W.3d 442, 445 (Tenn. 1999); *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 599 (Tenn. 1999), we review the issues involving the jurisdiction of the Claims Commission *de novo* without any presumption that the legal determinations of the commissioner were correct. *See Northland Ins. Co.*, 33 S.W.3d at 729; *Ardis Mobile Home Park v. State*, 910 S.W.2d 863, 865 (Tenn. Ct. App. 1995).

*Id.* at 791. Therefore, the question we must decide is whether an action for back pay in a teacher tenure case comes within a liberal construction of the Claims Commission's jurisdiction over "written contracts between the claimant and the state."

Under the law prior to the Claims Commission Act the General Assembly had given jurisdiction to the circuit and chancery courts "to enter judgments against the state founded upon any express contract or breach thereof." *See* Tenn. Code Ann. § 29-10-101(a)(1)(1984). In an action against the state for failing to keep a promise to insure a college football player, this court held that the suit was on an implied contract rather than an express contract and therefore not within the

court's jurisdiction. The court adopted a definition of an express contract used earlier by the Supreme Court as "written agreements stating the terms agreed upon by the parties." *See Greenhill,* 718 S.W.2d at 273 (quoting *V.L. Nicholson Co. v. Transcon Investment and Financial Ltd.*, 595 S.W.2d 474 (Tenn. 1980)).

# III.
## TENURE

The General Assembly authorized the Board of Regents to promulgate a tenure policy for faculty within the state university system to "ensure academic freedom and provide sufficient professional security to attract the best qualified faculty available." Tenn. Code Ann. § 49-8-301(a). Outside of providing a few general guidelines, the General Assembly left it up to the Board to "define the nature of tenure at institutions, and the rights and responsibilities of faculty with tenure." *Id.* § 49-8-301(b)(1). The General Assembly did define the grounds for dismissing a faculty member with tenure, Tenn. Code Ann. § 49-8-302, and the minimum requirements for the procedure to be used for the dismissal. Tenn. Code Ann. § 49-8-303. Finally, the General Assembly provided for a de novo judicial review of the dismissal. Tenn. Code Ann. § 49-8-304.

The labors of the Board of Regents on "Academic Freedom, Responsibility, and Tenure" can be found in the record. Under section III(A.) of Policy No. 5:02:03:00 the Board defined Academic Tenure as:

> A personnel status in an academic organizational unit (e.g., a department or division) or program of a college, university, or institute pursuant to which the academic year appointments of a full-time faculty who have been awarded tenure are continued at an institution until the expiration or relinquishment of that status, subject to termination for adequate cause, for financial exigency, or for curricular reasons.

In subsection B. the Board elaborated further:

> Tenure is a status pursuant to which faculty appointments for the academic year in an organizational unit (e.g., a department or division) or program of a college, university, or institute, are continued until retirement or physical or mental disability, subject to dismissal for adequate cause or unavoidable termination on account of financial exigency or curricular reasons. Tenure is awarded only by positive action by the Board, pursuant to the requirements and procedures of this policy, at a specific institution. The awarding of tenure is a recognition of the merit of a faculty member and of the assumption that he/she would meet the long-term staffing needs of the UNIT or PROGRAM and the institution. The continued professional growth and development of faculty is necessary for institutions of higher education to continue to provide educational programs in accordance with the institution's mission, goals, and changing needs of the institution. Tenure is only awarded to those members of the  faculty who have exhibited professional excellence and outstanding abilities

sufficient to demonstrate that their future services and performances justify the degree of permanence afforded by academic tenure. The Tennessee Board of Regents does not award tenure in non-faculty positions. Notwithstanding the above, this section shall not be interpreted as diminishing the rights of non-faculty employees previously awarded tenure in positions at the state technical institutes or area vocational-technical schools by the Board of Education, whose rights are governed by TBR Policy on Tenure in Non-Faculty Positions (5:02:03:20).

Finally, in subsection D.3 the Board outlined what it meant by a tenured appointment:

Tenure appointments are appointments of full-time faculty who have been awarded tenure by the Board pursuant to the provisions of this policy. Tenure appointments include the assurance of continued employment for the academic year for an indefinite period, subject to expiration, relinquishment, or termination of tenure as hereinafter provided. Such appointments do not include assurance of continued employment at any specified salary or position or employment during summer sessions or inter-sessions.

These provisions are echoed in the faculty handbook of Tennessee State University.

Mr. Wells was awarded tenure in 1972. He was reappointed each year until 1995 when he was terminated, allegedly for cause. When the charges surfaced against him in 1991 the school placed him on administrative leave with pay, and he continued in that status until his termination.

Each year until 1981 the school president sent Mr. Wells a form "Notice of Appointment and Agreement of Employment" which described the position to which he was appointed, the salary, and the term (the relevant academic year). The form required Mr. Wells to affix his signature and return it to the president. A standard paragraph appeared in each form. It provided:

In consideration of the above stated salary, you agree to perform such duties at such times and places and in such manner as the institution through its representatives may from time to time direct. You further agree to faithfully perform the duties assigned to you to the best of your ability, and to devote your full time to the institution, subject to the general supervision and pursuant to the orders, advice, and direction of appropriate representatives of the institution.

After 1981 the reappointment was effected by a letter from the president that stated the new salary, the term (usually the academic year), and that the proposed salary would constitute an amendment of his "previous appointment and agreement of employment."

Although tenure has been described in contract terms, *see State ex rel Chapdelaine v. Torrence*, 532 S.W.2d 542 (Tenn. 1975), we are convinced that a teacher tenure case is not within the jurisdiction granted to the Claims Commission by Tenn. Code Ann. § 9-8-307(a)(1)(L). In our

opinion tenure confers on the tenured teacher a statutory right to be reappointed on a yearly basis, subject to the limitations set out in the statutes and the Board of Regents policies. The policies reflect that the right does not guarantee any particular salary or appointment to any particular position. Therefore, his actual contract varies from year to year. The forms used early in Mr. Wells' career require him to "perform such duties at such times and places and in such manner as the institution through its representatives may from time to time direct." Each reappointment letter alluded to the previous "appointment and agreement of employment." Therefore, most of the details of Mr. Wells' duties were unwritten.

None of the writings in the record even reflect what classes he taught or how many hours he was required to teach in any academic year. After 1995, when the University terminated Mr. Wells, he did not have a contract at all. Notwithstanding that the court finally concluded that the termination was in violation of Mr. Wells' tenure rights, the fact remains that there was no contract, written or otherwise, for the years following 1995. What this action in the Claims Commission is about is the loss of the statutory right to be reappointed. There is no basis in the statutes for the Commission to assume jurisdiction over that claim.

**IV.**

Lurking beneath the surface is Mr. Wells' legitimate complaint that the state argued in the chancery court that the Claims Commission was the only entity with jurisdiction to hear the claim for back pay and then argued in the Commission that the Commission lacked the jurisdiction to hear it.[2] Ordinarily the court might frown on a party that took such inconsistent positions, especially when that party is the state of Tennessee dealing with one of its citizens. But taking different positions does not amount to a judicial estoppel when the different positions were not under oath, *Sartain v. Dixie Coal & Iron Co.*, 266 S.W. 313 (Tenn. 1924), and any other estoppel requires a justifiable reliance on the matter asserted. *See Houk v. Memphis Const. Co.*, 15 S.W.2d 742 (Tenn. 1929). A party cannot claim a justifiable reliance when that party had an equal opportunity of ascertaining the truth of the representation. *Id.* at 743.

Counsel for Mr. Wells in the chancery court had equal access to the case of *State ex rel Chapdelaine v. Torrence*, 532 S.W.2d 542 (Tenn. 1975), in which the court discussed the chancery court's jurisdiction to award back pay for a violation of a teacher's tenure rights. In short, the court held that the judicial review provisions of tenure cases (now Tenn. Code Ann. § 49-8-304) gave the court jurisdiction to entertain the claim for back pay against the state. It is a mystery to us why the claim for back pay was not pursued in the original action in the chancery court or why the order overruling the motion for back pay was not appealed. But those issues are not before us now. This case is only about the jurisdiction of the Claims Commission, and we have decided that the Commissioner correctly decided that issue.

---

[2]The chancellor adopted the state's argument for one of the reasons why he overruled the motion for back pay and costs. The main reason cited by the chancellor, however, was the fact that at the time Mr. Wells made the motion the case was on appeal and the trial court had lost jurisdiction.

The judgment is affirmed and the cause is remanded to the Claims Commission for any further proceedings necessary. Tax the costs on appeal to the appellant, Alexander Wells, Principal and Phillip Leon Davidson, Surety, for which execution may issue if necessary.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.