IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 25, 2008 Session

## JOSH W. NEWELL v. JEFF MAITLAND, ET AL.

**Direct Appeal from the Circuit Court for Gibson County**
**No. 8226     Donald Paul Harris, Senior Judge**

_____

**No. W2007-01704-COA-R3-CV - Filed May 21, 2008**

_____

This appeal involves a negligence action filed after the plaintiff was charged with child rape. The plaintiff sued the sheriff's deputy and Department of Children's Services employee who interviewed the alleged victim; the sheriff; the county mayor; the county itself; a Department of Children's Services supervisor; and the District Attorney General. The plaintiff contended that if a "child protective team" had interviewed the victim, he would not have been arrested and charged with child rape. The trial court dismissed the claims against the state employees for lack of jurisdiction, and it dismissed the claims against the county employees pursuant to the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101, *et seq.* The sheriff's deputy was also named as a defendant in his individual capacity, and the trial court granted his motion for summary judgment. The plaintiff appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Sam J. Watridge, Humboldt, TN, for Appellant

James I. Pentecost, Jon A. York, Brent S. Usery, Jackson, TN, for Appellees, Gibson County, Joe Shepard, Ronnie Riley and Jeff Maitland

Robert E. Cooper, Jr., Attorney General and Reporter, Douglas Earl Dimond, Senior Counsel, Nashville, TN, for Appellees Perry Sharpe and Beth Dudley

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, Heather C. Ross, Senior Counsel, Nashville, TN, for Appellee District Attorney General Garry Brown

**OPINION**

## I.  FACTS & PROCEDURAL HISTORY

On October 12, 2005, Josh Newell ("Plaintiff") was arrested by Gibson County Sheriff's deputies and charged with rape of a child.  The eleven-year old alleged victim had been interviewed earlier that day by Sheriff's Deputy Jeff Maitland and Perry Sharpe, an employee of the Tennessee Department of Children's Services ("DCS").  Initially, the victim insisted that she could not remember the alleged incident, but eventually she told the interviewers that the incident did occur.  Plaintiff entered a plea of nolo contendere to the offense of aggravated assault, and the child rape charge was dismissed.

On October 11, 2006, Plaintiff filed this lawsuit naming as defendants Deputy Maitland, Mr. Sharpe, Gibson County, the Gibson County Sheriff, the Gibson County Mayor, a DCS Supervisor, and the District Attorney General.  Plaintiff alleged negligence in the investigation and interviews leading to his arrest, and he claimed that the prosecution against him was maliciously initiated and pursued because the defendants knew or should have known the rape allegations were false.[1]  Plaintiff claimed that Deputy Maitland and Mr. Sharpe were negligent in interviewing the victim because they allegedly failed to acknowledge her statements that she could not remember the incident and coerced her into making untrue allegations.  Plaintiff claimed that Tennessee Code Annotated section 37-1-607 requires that a Child Protective Team investigate child sexual abuse cases, and that Deputy Maitland and Mr. Sharpe should have ceased interviewing the victim and "called in" the Child Protective Team.  Plaintiff alleged that "if Gibson County had a Child Protective Team in place to interview the alleged victim in the case against the Plaintiff[,] an arrest warrant would not have been issued for his arrest and charges would not have been brought against the Plaintiff."  Plaintiff accused Deputy Maitland of fabricating evidence to obtain the arrest warrant.

Plaintiff named the District Attorney General, Garry Brown, and a DCS Supervisor, Beth Dudley, as defendants, alleging that they had failed to appoint or create a Child Protective Team for Gibson County.  He also alleged, upon information and belief, that Ms. Dudley participated in the investigation and had an ulterior motive of harming Plaintiff's father, a local judge.  Plaintiff alleged that the Gibson County Sheriff, Joe Shepherd, was negligent by failing to ensure that Deputy Maitland was properly trained to investigate cases involving minor children.  Plaintiff also claimed that he was damaged by the negligent actions of the Gibson County Mayor, Ronnie Riley, in that he allegedly failed to provide proper funding for training Deputy Maitland.  Plaintiff also named Gibson County as a defendant, alleging that it was vicariously liable for the acts of its employees.

---

[1] The complaint simply lists "Count I – Compensatory Damages" and "Count II – Punitive Damages."  At a later hearing, Plaintiff's attorney clarified that his claim was not one for malicious prosecution, but for negligence.

Plaintiff claimed the allegedly negligent actions were operational in nature, therefore the defendants' governmental immunity was removed. He sought compensatory and punitive damages.[2]

Relevant to the facts of this case, Title 37, Chapter 1, Part 4, Tennessee Code Annotated, entitled "Mandatory Child Abuse Reports," provides as follows:

> **§ 37-1-403. Reporting of brutality, abuse, neglect or child sexual abuse.**
> . . .
> (c)(1) If a law enforcement official or judge becomes aware of known or suspected child abuse, through personal knowledge, receipt of a report, or otherwise, such information shall be reported to [DCS] immediately and, where appropriate, the child protective team shall be notified to investigate the report for the protection of the child in accordance with the provisions of this part. Further criminal investigation by such official shall be appropriately conducted in coordination with the team or [DCS] to the maximum extent possible.
> . . .
>
> **§ 37-1-405. Reference of reported cases to local director – Notice to judge.**
> (a)(1) All cases reported to . . . state or local law enforcement officers shall be referred immediately to the local director of the county office of [DCS] for investigation.
> . . .
> (b)(2) If the case appears to involve severe child abuse as defined in § 37-1-102, including child sexual abuse, the county director of [DCS] shall immediately notify and consult with the district attorney general where the harm occurred, and the district attorney general may take such action as the district attorney general deems appropriate . . . . Whenever there are multiple investigations, [DCS], the district attorney general, law enforcement, and, where applicable, the child protection team, shall coordinate their investigations to the

---

[2] In the section of Plaintiff's complaint entitled "Count II - Punitive Damages," he alleged that the defendants' failure to refer the case to a Child Protective Team resulted in irreparable harm and "a violation of due process," although he did not set forth a separate claim for a violation of his due process rights. His complaint also requested "an injunction which prohibits interviews of children involved in sexual abuse cases by law enforcement who are not on the Child Protective Team." Plaintiff's appellate brief describes his case against the defendants as one "for negligence," and he does not mention a due process claim or request for injunctive relief. Therefore, on appeal, we will not address whether Plaintiff was entitled to such relief. It is not the function of the appellate court to research and construct the parties' arguments, and we are under no duty to consider issues not argued in the brief. *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2006); *Bean v. Bean*, 40 S.W.3d 52, 56 (Tenn. Ct. App. 2000).

maximum extent possible so that interviews with the victimized child shall be kept to an absolute minimum. . . .
. . .

**§ 37-1-406. Availability for receiving reports – Commencement of investigations – Examination and observation of child – Reports – Services provided.**
(a) [DCS] shall be capable of receiving and investigating reports of child abuse twenty-four (24) hours a day, seven (7) days a week. The county office shall make a thorough investigation promptly after receiving either an oral or written report of harm. . . .
(b) In cases involving child sexual abuse, the investigation shall be conducted by a child protective investigation team as defined in § 37-1-602 relative to child sexual abuse pursuant to the provisions of § 37-1-606. . . .
. . .
(l) The legislative intent of this section is to protect the legal rights of the family in an investigation and to ensure that no activity occurs that compromises [DCS]'s child abuse investigation or any ongoing concurrent criminal investigation conducted by law enforcement.
. . .

Title 37, Chapter 1, Part 6, Tennessee Code Annotated, entitled "Child Sexual Abuse," further provides, in pertinent part:

**§ 37-1-602. Part definitions – Harm to child's health or welfare.**
(a) For purposes of this part . . . (2) "Child protection team" means the investigation team created by § 37-1-607; . . . .

**§ 37-1-605. Reports of known or suspected child sexual abuse – Investigations**
. . .
(b)(2) If a law enforcement official or judge becomes aware of known or suspected child sexual abuse, through personal knowledge, receipt of a report or otherwise, such information shall be reported to [DCS] immediately and the child protective team shall be notified to investigate the report for the protection of the child in accordance with the provisions of this part. Further criminal investigation by such official shall be appropriately conducted.
. . .

**§ 37-1-606. Departmental availability for receiving reports – Commencement of investigations – Institutional abuse.**

(a) [DCS] shall be capable of receiving and investigating reports of known or suspected child sexual abuse twenty-four (24) hours a day, seven (7) days a week. If it appears that the immediate safety or well-being of a child is endangered, that the family may flee or the child will be unavailable for purposes of conducting a child protective investigation, or that the facts otherwise so warrant, [DCS] shall commence an investigation immediately, regardless of the time of day or night. In all other child sexual abuse cases, a child protective investigation shall be commenced within twenty-four (24) hours of receipt of the report.

. . .

**§ 37-1-607. Child protective teams – Investigations – Services.**
(a)(1) [DCS] shall coordinate the services of child protective teams. At least one (1) child protective team shall be organized in each county. The district attorney general of each judicial district shall, by January 15 of each year, report to the judiciary committees of the senate and house of representatives on the status of the teams in the district attorney general's district as required by this section, and the progress of the child protective teams that have been organized in the district attorney general's district. . . .

(2) Each team shall be composed of one (1) person from [DCS], one (1) representative from the office of the district attorney general, one (1) juvenile court officer or investigator from a court of competent jurisdiction, and one (1) properly trained law enforcement officer with countywide jurisdiction from the county where the child resides or where the alleged offense occurred. The team may also include a representative from one (1) of the mental health disciplines. It is in the best interest of the child that, whenever possible, an initial investigation shall not be commenced unless all four (4) disciplines are represented. An initial investigation may, however, be commenced if at least two (2) of the team members are present at the initial investigation. In those geographical areas in which a child advocacy center meets the requirements of § 9-4-213(a) or (b), child advocacy center directors, or their designees, shall be members of the teams under this part and part 4 of this chapter for the purposes of provision of services and functions established by § 9-4-213 or delegated pursuant to that section. . . .

(3) It is the intent of the general assembly that the child protective investigations be conducted by the team members in a manner that not only protects the child but that also preserves any evidence for future criminal prosecutions. It is essential, therefore, that all phases of the child protective investigation be appropriately conducted and

that further investigations, as appropriate, be properly conducted and coordinated.

(b)(1) [DCS] shall convene the appropriate team when a report of child sexual abuse has been received. . . . The role of the teams shall be to conduct child protective investigations of reported child sexual abuse and to support and provide services to sexually abused children upon referral as deemed by the teams to be necessary and appropriate for such children.

(2) For each child sexual abuse report it receives, [DCS] shall immediately notify the child protection investigation team, which shall commence an on-site child protective investigation. The team shall:

> (A) Determine the composition of the family or household, including the name, address, age, sex and race of each child named in the report; any siblings or other children in the same household or in the care of the same adults; the parents or other persons responsible for the child's welfare; and any other adults in the same household;
>
> (B) Determine whether there is any indication that any child in the family or household is sexually abused, including a determination of harm or threatened harm to each child; the nature and extent of present or prior injuries, or abuse, and any evidence thereof; and a determination as to the person or persons apparently responsible for the abuse;
>
> (C) Determine the immediate and long-term risk to each child if the child remains in the existing home environment; and
>
> (D) Determine the protective, treatment and ameliorative services necessary to safeguard and ensure the child's well-being and development and, if possible, to preserve and stabilize family life.

The team shall seek to interview the child in a neutral setting, other than where the alleged abuse occurred, whenever possible.

(3) Immediately upon receipt of a report alleging, or immediately upon learning during the course of an investigation, that:

(A) Child sexual abuse has occurred; . . . [DCS] shall orally notify the team, the appropriate district attorney general and the appropriate law enforcement agency whose criminal investigations shall be coordinated, whenever possible, with the child protective team investigation. . . . If independent criminal investigations are made, interviews with the victimized child shall be kept to an absolute minimum and, whenever possible, reference to the videotape or tapes made by the child protective teams should be utilized.

. . .

All defendants moved to dismiss. The "County Defendants," including Deputy Maitland, Sheriff Shepherd, Mayor Riley, and Gibson County, also moved for summary judgment. Senior Judge Donald P. Harris was assigned to hear the case by order of the Tennessee Supreme Court. Judge Harris held a hearing on the motions on June 22, 2007, and announced his ruling from the bench. An order incorporating his oral ruling was entered on July 9, 2007. Plaintiff's claims against the "State Defendants" (Mr. Sharpe and Ms. Dudley from DCS, and the District Attorney General, Garry Brown) were dismissed because the trial court found it lacked jurisdiction to hear such claims. Plaintiff's claims against the County Defendants in their official capacities were also dismissed on the basis that Tennessee Code Annotated section 29-20-205(5) provides immunity to governmental entities for injury caused by a negligent act or omission of an employee if the injury arises out of "the institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause." Plaintiff had also named Deputy Maitland as a defendant in his individual capacity, and upon considering Plaintiff's subsequent plea of nolo contendere to the offense of aggravated assault, the trial judge granted Deputy Maitland's motion for summary judgment. Plaintiff filed a timely notice of appeal to this Court.

## II. ISSUES PRESENTED

The appellant has timely filed his notice of appeal and presents the following issues, as we perceive them, for review:

1.      Whether the trial court had jurisdiction over the claims against the State Defendants;
2.      Whether the trial court erred in dismissing the claims against the County Defendants;
3.      Whether the trial court erred in granting summary judgment to Deputy Maitland.

For the following reasons, we affirm the decision of the circuit court.

## III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim only tests the sufficiency of the complaint, seeking to determine whether the pleadings state a claim upon which relief can be granted. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002); *Smith v. First Union Nat. Bank of Tenn.*, 958 S.W.2d 113, 114-15 (Tenn. Ct. App. 1997). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law because they do not constitute a cause of action. *Smith*, 958 S.W.2d at 115 (citations omitted). In making this determination, we construe the complaint liberally in favor of the plaintiff, taking all allegations of fact therein as true. *Id.* (citing *Fuerst v. Methodist Hosp. South*, 566 S.W.2d 847, 848-49 (Tenn. 1978); *Holloway v. Putnam County*, 534 S.W.2d 292, 296 (Tenn. 1976)). However, "[t]here is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint." *Trau-Med*, 71 S.W.3d at 704 (quoting *Donaldson v. Donaldson*, 557 S.W.2d 60, 61 (Tenn. 1977)). Where "no claim for relief is stated by a party, a court may properly dismiss the action, either on motion or sua sponte." *Donaldson*, 557 S.W.2d at 62 (citations omitted).

Summary judgment is appropriate only when there is no genuine dispute of material fact with regard to the claim or defense asserted in the motion, and when the moving party is entitled to a judgment as a matter of law. **Burgess v. Harley**, 934 S.W.2d 58, 62 (Tenn. Ct. App. 1996) (citing *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993)).

## IV. DISCUSSION

### A. The State Defendants

First, we will consider the claims against the DCS employees and the District Attorney General in their official capacities. A suit against a state official in his or her official capacity is a "suit against the state."[3] **Whitaker v. Whirlpool Corp.**, 32 S.W.3d 222, 229 (Tenn. Ct. App. 2000); **Greenhill v. Carpenter**, 718 S.W.2d 268, 271 (Tenn. Ct. App. 1986) (citing *Cox v. State*, 217 Tenn. 644, 399 S.W.2d 776, 778 (1965)). "Historically, the doctrine of sovereign immunity has provided that a sovereign governmental entity cannot be sued in its own courts absent legislative consent." **Wells v. Tenn. Bd. of Regents**, 231 S.W.3d 912, 916 (Tenn. 2007) (citing *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997); *Williams v. State*, 139 S.W.3d 308, 311 (Tenn. Ct. App. 2004)). The doctrine has both a constitutional and a statutory basis. **Id.** (citing *Jones v. L & N R.R. Co.*, 617 S.W.2d 164, 170 (Tenn. Ct. App. 1981)). Article I, section 17 of the Tennessee Constitution provides in part that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tennessee Code Annotated section 20-13-102(a) prohibits courts from entertaining suits against the State, absent waiver, and requires dismissal on proper motion.

The Tennessee Claims Commission has exclusive jurisdiction to determine all monetary claims against the state based on acts or omissions of state employees falling within certain categories, including:

> (N) Negligent deprivation of statutory rights created under Tennessee law, except for actions arising out of claims over which the civil service commission has jurisdiction. The claimant must prove under this subdivision (a)(1)(N) that the general assembly expressly conferred a private right of action in favor of the claimant against the state for the state's violation of the particular statute's provisions.

Tenn. Code Ann. § 9-8-307(a)(1)(N) (1999 & Supp. 2007). Therefore, even assuming that Plaintiff could establish a violation of the statutes regarding child protective teams, and a private right of

---

[3] "State officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain." Tenn. Code Ann. § 9-8-307(h) (1999 & Supp. 2007).

action for such violation, exclusive jurisdiction for his negligence claims against the State Defendants is vested in the Tennessee Claims Commission.

Nonetheless, Plaintiff argues that he could file his claims in circuit court, relying on Tennessee Code Annotated section 9-8-404, which provides, in part:

> (a) Prior to hearing, upon the petition of either party *showing the approval of the attorney general and reporter*, the claim shall be removed to the appropriate chancery or circuit court with venue for handling in accordance with the provisions of this part, except the normal procedural rules of the court shall be applicable. Appeal from the chancery or circuit court shall be to the court of appeals.
> (b) The commission *may* transfer the action to the appropriate chancery or circuit court with venue on its own after a determination, in writing, by the commission that fair and complete resolution of all claims involved cannot be accomplished in administrative proceedings before the commission. Such transfers shall be limited to tort claims arising out of the same fact situation where much of the evidence to be presented would be admissible against the state and one (1) or more additional defendants. . . .

(emphasis added). Contrary to Plaintiff's argument, this statute does not authorize a plaintiff to file a claim in circuit court based upon his own decision of whether the claim can be resolved fairly before the Claims Commission. A transfer pursuant to subsection (a) requires the consent of the Attorney General and Reporter. "Subsection (b) authorizes, but does not mandate, the transfer of claims in certain circumstances." *Mullins v. State*, No. E2007-01113-COA-R9-CV, 2008 WL 199854, at *7 (Tenn. Ct. App. Jan. 24, 2008). Although a transfer pursuant to this statute "may be likely in some cases, it is not a guaranteed certainty." *Id.* The statute provides "discretionary authority" to the Claims Commission to transfer a case, and the Claims Commission's denial of a motion to transfer is reviewed for abuse of discretion. *Hungerford v. State*, 149 S.W.3d 72, 76 (Tenn. Ct. App. 2003). Plaintiff's argument that this statute allowed him to file his claims in circuit court is without merit.

Plaintiff also argues that the trial court had jurisdiction over his claims based upon the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101, *et seq.* The Tennessee Governmental Tort Liability Act "governs claims against counties, municipalities, and other local governmental agencies, but does not apply to state government." *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997); *see also Lucius v. City of Memphis*, 925 S.W.2d 522, 525 (Tenn. 1996). Plaintiff's arguments involving the State Defendants in their official capacities are without merit.

Although it is not mentioned in Plaintiff's brief, we note that his complaint also contained the following paragraph regarding Ms. Dudley, the DCS Supervisor for Gibson County:

Plaintiff alleges that Beth Dudley in her official *and individual capacities*, at the time of the investigation into the allegations against the Plaintiff, was opposed to [Plaintiff's] father Judge Robert Newell and that she, based upon information and belief, assisted in the investigation, but not as a member of the Child Protective Team, with the ulterior motive of harming Judge Robert Newell, by assisting in the prosecution of his son.

(emphasis added). As previously noted, "[s]tate officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain." Tenn. Code Ann. § 9-8-307(h) (1999 & Supp. 2007). To the extent that Plaintiff's complaint could be construed to allege willful conduct on the part of Ms. Dudley, we nevertheless conclude that the complaint fails to state a claim for relief. Plaintiff does not allege that Ms. Dudley was not authorized to participate in the investigation or that he was injured in any way by her participation. Taking the allegations in the complaint as true, Plaintiff does not state a cause of action, and "[t]here is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint." ***Trau-Med of Am., Inc. v. Allstate Ins. Co.***, 71 S.W.3d 691, 704 (Tenn. 2002). Thus, Plaintiff's claim against Ms. Dudley was properly dismissed.

### B. The County Defendants

Plaintiff's complaint alleged that "if Gibson County had a Child Protective Team in place to interview the alleged victim in the case against the Plaintiff[,] an arrest warrant would not have been issued for his arrest and charges would not have been brought against the Plaintiff." Plaintiff contended that Deputy Maitland, Mayor Riley, and Sheriff Shepherd, acting in their official capacities, were negligent in a manner that contributed to Plaintiff's injury. Plaintiff also claimed that Gibson County was vicariously liable for the other defendants' allegedly negligent acts.

"A suit against a governmental official in his official capacity is no different from a suit against the governmental entity itself." ***Bly v. Keesling***, No. E2002-01115-COA-R3-CV, 2002 WL 31863297, at *6 (Tenn. Ct. App. Dec. 23, 2002); *see also* ***Cizick v. Bass***, No. 02A01-9809-CV-00244, 1999 WL 145209, at *2 (Tenn. Ct. App. W.S. Mar. 18, 1999). "Local governmental entities are immune from suit except when the General Assembly has, by statute, explicitly permitted them to be sued." ***Doe v. Coffee County Bd. of Educ.***, 852 S.W.2d 899, 906 (Tenn. Ct. App. 1992) (citing *Fretwell v. Chaffin*, 652 S.W.2d 755, 756 (Tenn. 1983); Tenn. Code Ann. § 29-20-201(a)). Tennessee Code Annotated section 29-20-205 begins by stating, "Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment . . . ." However, the statute goes on to list several exceptions to that rule. For example, immunity is not removed if the plaintiff's injury arises out of:

(1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused; [or]

-10-

(2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights; [or]

. . .

(5) the institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause; . . . .

Tenn. Code Ann. § 29-20-205 (2000). Plaintiff's brief only discusses the first exception to the removal of immunity regarding discretionary functions, but the trial court based its decision on the fifth exception, and we agree that it controls the issue before us. Plaintiff's alleged injury clearly arose out of the institution or prosecution of a judicial proceeding, so the County Defendants are immune from suit in their official capacities even if the proceeding was instituted maliciously or without probable cause. The claims against the County Defendants were properly dismissed.

## C.  *Deputy Maitland*

Plaintiff's final issue is whether the trial court properly granted summary judgment to Jeff Maitland individually. Plaintiff's sole argument as to why summary judgment was improper is that Deputy Maitland's motion for summary judgment was not accompanied by a statement of undisputed material facts.[4] Our Supreme Court recently emphasized "the importance of attorneys using Rule 56.03 statements of material facts to their fullest," explaining that trial courts and appellate courts should not be required to sift through the record to find any information that is essential to a summary judgment decision. ***Bennett v. Trevecca Nazarene Univ.***, 216 S.W.3d 293, 299, n.4 (Tenn. 2007). However, a trial court, acting within its discretion, may waive the requirements of the rule in an appropriate situation. ***Williams v. Watson***, No. E2005-02403-COA-R3-CV, 2007 WL 187925, at *10 (Tenn. Ct. App. Jan. 25, 2007) (citing *Butler v. Diversified Energy, Inc.*, No. 03A01-9804-

---

[4] Rule 56.03 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

> In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the Tennessee Rules of Civil Procedure shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record.
>
> Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment.
>
> . . .

CV-00146, 1999 WL 76102, at *3 (Tenn. Ct. App. E.S. Jan. 28, 1999)). Here, Plaintiff did not even raise the issue in the trial court that Deputy Maitland failed to file a statement of undisputed facts. Therefore, we find no abuse of discretion in the trial court's decision to grant summary judgment without the benefit of a statement of undisputed facts.

Plaintiff does not point to any disputed facts or cite any authority to suggest that Deputy Maitland was not entitled to judgment as a matter of law; thus, we affirm the trial court's grant of summary judgment.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to the appellant, Josh W. Newell, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.