STATE of Tennessee, Appellee,

v.

Harry J. FRAHM, III, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

May 29, 1987.

Permission to Appeal Denied by Supreme Court Sept. 8, 1987.

Dan Garfinkle, David I. Komisar, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Bettye Springield–Carter, Asst. Atty. Gen., Katie Novak, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

JAMES C. BEASLEY, Special Judge.

The defendant, Harry J. Frahm, III, appeals as of right from his conviction in a bench trial of driving while under the influence of an intoxicant. He was fined $250 and sentenced to serve eleven (11) months and twenty-nine (29) days with all but ninety-six (96) hours suspended.

He has raised three issues, one of which challenges the sufficiency of the convicting evidence.

The State's proof established that at about 11:30 p.m. on June 23, 1984, a vehicle driven by the defendant collided with a parked vehicle resulting in extensive damage to both vehicles. Mrs. Peggy Smith testified that she was at her home watching television when she heard a loud crash. When she opened the door she observed that her son's car had been knocked the length of her driveway and the defendant's vehicle was near the front steps of her

house. The defendant was slumped over the steering wheel and she feared that he was dead or seriously injured. After calling an ambulance and the police, Mrs. Smith returned to the front yard, saw the defendant had left the car and was wandering around. She observed a cut on his head which she described as not being deep. The defendant kept asking her why she called the police. He cursed her and stated that she had no right to call them. Mrs. Smith testified that the defendant smelled like a walking distillery and in her opinion "he was so drunk it was unreal." She allowed him to use her phone to call his attorney and stated that the police had quite a time getting him off the phone.

Officer Daniel Postigleone of the Metro Police Department testified that he responded to the accident call and as he arrived on the scene an ambulance was driving away. He entered the Smith residence where the defendant was using the phone and was told by the defendant to wait a minute while he talked to his attorney. The officer testified that he smelled a strong odor of alcohol on the defendant and found him to be very arrogant at the scene. Later at the hospital he noted that the defendant was arrogant one moment and joking the next.

Although the defendant said he did not care about his injury, the officer recalled the ambulance and had the defendant transported to the hospital. The officer later received a telephone call from a hospital security guard advising him that the defendant had refused treatment and was threatening to leave the hospital. The defendant and his attorney waited at the hospital until Officer Postigleone arrived and after a discussion the defendant consented to have a blood sample drawn at 1:15 a.m.

The officer testified that he believed the defendant was under the influence of alcohol based on the odor of the intoxicant on the person and in the car of the defendant, as well as the defendant's attitude. He stated that he decided to await the results of the blood test before making an arrest.

An analytical toxicologist testified that the defendant's blood sample contained .15 gram percent ethyl alcohol.

The defense called Mr. Monte Curry, a member of the Nashville Bar, who testified that he had been the defendant's attorney for approximately ten years. On the night in question he received a call from the defendant advising him that he had been involved in an automobile accident and was being transported to Southern Hills Hospital. The defendant stated that he had been unable to reach his father and needed someone to take him home. Mr. Curry stated that shortly after he arrived at the hospital the defendant's treatment was concluded and he was released. As they started to leave, a security guard asked them to wait for the arresting officer which they readily agreed to do. When asked about the blood test, he advised that he saw nothing wrong with giving a blood sample since he was of the opinion that the defendant was not under the influence of drugs or alcohol. They had to wait a while to do the blood test and as the defendant came out of the hospital after giving the sample, his father arrived and took him home.

On cross-examination the witness testified that he could smell some alcohol on the defendant, but it was not a strong odor. He further testified that the defendant told him that he was sleepy and on the way home from a Catholic church function where he had had a few drinks when the accident occurred.

In challenging the sufficiency of the evidence, the defendant first attacks the credibility of the State's witnesses and the weight of their testimony.

Of course the law is well settled that it is not the function of an appellate court to reweigh evidence adduced at a criminal trial; a guilty verdict approved by the trial judge accredits the testimony of the State's witnesses and resolves all conflicts of testimony in favor of the theory of the State. In a case tried without a jury, the verdict of the trial judge is entitled to the same weight on appeal as a jury verdict. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978).

■ A verdict against the defendant removes the presumption of innocence and raises a presumption of guilt. The defendant has the burden upon appeal of showing that the evidence preponderates against the verdict in favor of his innocence. *State v. Grace*, 493 S.W.2d 474, 475 (Tenn.1973). When the sufficiency of the evidence is challenged, the standard for review by an appellate court is whether after considering the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Tenn.R.App.P. 13(e).

■ Considering this evidence in the light most favorable to the State we find it amply supports the finding of guilt by the trial judge. In addition to the expressed opinion of Mrs. Smith and Officer Posligleone that the defendant was under the influence, there was testimony that the defendant had a "few drinks" and was sleepy as he was driving home. While this evidence standing alone would have been sufficient to establish the defendant's guilt beyond a reasonable doubt; the trial judge also had for his consideration the fact that the defendant's blood contained .15% by weight of alcohol within 1½ to 2 hours after the accident.

T.C.A. § 55–10–408(b) provides that "[e]vidence that there was, at the time alleged, ten-hundredths of one percent (.10%), or more, by weight of alcohol in the defendant's blood, shall create a presumption that the defendant was under the influence of such intoxicant, and that his or her ability to drive was impaired thereby, sufficiently to constitute a violation of § 55–10–401." Although defendant now contends that such presumption should be invalidated by decisions in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39; *State v. Martin*, 702 S.W.2d 560 (Tenn. 1985); and *State v. Bolin*, 678 S.W.2d 40 (Tenn.1984), he correctly acknowledges that the issue in those cases dealt with "presumption" in jury instructions.

■ There is no *Sandstrom* violation here. In rendering his decision, the trial judge while discussing the blood test stated, "I like to use the word inference rather than a presumption." He then concluded that all of the proof as well as the blood test supports the State's contention. Furthermore, there was no objection to the admission of this evidence as to its consideration by the trier of fact nor was the issue of the constitutionality of the subject statute presented in the motion for a new trial. Therefore the issue is waived. *Hawkins v. State*, 543 S.W.2d 606 (Tenn.Crim. App.1976); Rule 3(e) T.R.A.P.; Rule 36(a) T.R.A.P.

The sufficiency issue is without merit.

Also unmeritorious is the defendant's claim that the trial court erred in overruling his motion for a continuance.

On the morning of trial October 7, 1985, defense counsel orally made the following motion:

MR. GARFINKLE: Yes, if Your Honor please. In the Harry Frahm case, I move the Court to continue this case on this ground. Besides the defendant I have two—I would say important witnesses, who saw the defendant just within minutes after he was driven out to the hospital. One witness is an attorney named Mr. Monte Curry. The other witness is the defendant's father. The defendant's father had some sort of physical attack and is presently in the hospital. I talked to his wife this morning and I need him as a witness. I think he is a most important witness and, of course, if he is in the hospital, he can't be in Court. And on that premise I am moving the Court for a continuance.

In support of this motion, the defendant submitted a letter dated October 7, 1985, signed by Dr. Benjamin F. Byrd, Jr., which stated: "The above patient [Mr. Harry Frahn] is presently hospitalized at West Side Hospital and will be unable to make a court appearance in the near future."

The State objected to the continuance and pointed out that when the case was previously set on September 3 the State's

civilian witnesses had been assured the matter would be tried on the next setting.

After stating his belief that the testimony of the defendant's father would be redundant to that of Attorney Monte Curry, the trial judge held that the absence of a redundant witness would not support a continuance and overruled the motion.

A party seeking a continuance for the purpose of obtaining evidence must demonstrate to the Court the necessity for the continuance. In order to satisfy this burden, the moving party must:

(1) File an affidavit with the court, showing good cause and specifying the testimony sought. T.C.A. § 19–1–110(a).

(2) Show that the testimony of the witness sought would be material to the issue in the case.

(3) Show that the evidence is not merely cumulative.

(4) Show that the witness would be available at a later date.

(5) Demonstrate that reasonable diligence was exercised to obtain the witness' presence. *State v. Cook*, 718 S.W.2d 273, 275 (Tenn.Crim.App.1986).

█ Not only was there a lack of compliance with these requirements in the application for a continuance; but the defendant has failed to demonstrate subsequent to trial how a different result would or might reasonably have been reached had the continuance been granted. The rule is clearly set out in *Baxter v. State*, 503 S.W.2d 226 (Tenn.Crim.App.1973).

A reversal will be ordered on account of a denial of a continuance only if the appellate court is convinced that the complaining party did not have a fair trial and that a different result would or might reasonably have been reached had

there been a different disposition of the application for a continuance.

We are satisfied from our review of this record that there was no abuse of discretion on the part of the trial judge in denying the application for a continuance. In considering this issue, we have elected to examine the affidavit of Harry J. Frahm, Jr., dated July 3, 1986, although it was never presented to the trial court and is not properly before us.[1] We note some apparent discrepancies between the testimony proposed by this witness and that given at trial by Mr. Curry. At best the father's testimony would have been merely cumulative and we are satisfied that a different result would not have been reached had it been presented and considered.

Finally, we consider the claim that the trial court erred in disallowing Monte Curry's testimony as to what Officer Postiglione's opinion was concerning the defendant's intoxication.

█ The defendant sought to prove through this witness an alleged prior inconsistent statement of the officer. However, having failed to lay a proper foundation for impeachment during the officer's testimony, the evidence sought to be introduced was clearly hearsay and subject to exclusion on objection. The trial court properly so ruled.

Finding no reversible error, we affirm the conviction.

O'BRIEN and BYERS, JJ., concur.

---

1. Merely attaching a document to a brief does not make it a part of the record.