# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 7, 2011

## STATE OF TENNESSEE v. JOHN EDWARD LYNCH

**Direct Appeal from the Circuit Court for Marshall County**
**Nos. 2008-CR-16, 2008-CR-98     Robert Crigler, Judge**

---

**No. M2010-02481-CCA-R3-CD - Filed August 24, 2012**

---

A Marshall County Grand Jury returned two indictments against Defendant, John Edward Lynch, charging him with violation of the Habitual Motor Offenders Act (count one), eleventh offense driving under the influence of an intoxicant (DUI) (count two), and violation of the implied consent law (count three) in Case No. 08-CR-16 and felony failure to appear in Case No. 08-CR-98. Following two jury trials, Defendant was convicted of the offenses. He was sentenced to four years for violation of the Habitual Motor Offenders Act, three years for eleventh offense DUI, eleven months, twenty-nine days for violation of the implied consent law, and four years for felony failure to appear. The trial court ordered count three of case no. 08-CR-16 to run concurrently to count one, and the remaining counts in case nos. 08-CR-16 and 08-CR-98 were ordered to run consecutively with each other for an effective eleven-year sentence in the Department of Correction. On appeal, Defendant argues: (1) that the evidence was insufficient to support his conviction for DUI; (2) that the trial court erred in denying his request for a jury instruction on necessity; (3) that the trial court erred in denying his request for a continuance in case no. 08-CR-98; and (4) that the trial court erred in imposing consecutive sentences. After a thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

James O. Martin, Nashville, Tennessee; and Andrew Jackson Dearing, District Public Defender, Shelbyville, Tennessee, (on appeal); and William J. Harold, Lewisburg, Tennessee, (at trial), for the appellant, John Edward Lynch.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; Weakley E. Barnard, Chris Collins, and Carey Kefauver, Assistant District Attorneys General; for the appellee, the State of Tennessee

**OPINION**

## I. Background

*Trial - Case No. 08-CR-16*

On December 22, 2007, at approximately 1:00 a.m., Sergeant Anthony McLean of the Lewisburg Police Department was stopped at the intersection of Spring Place Road and Belfast Street when he witnessed Defendant's vehicle run a stop sign. He estimated that the car was traveling five to ten miles per hour. Sergeant McLean then activated his blue lights, got in behind Defendant, and initiated a traffic stop.

After Sergeant McLean approached the car, Defendant said that the vehicle was registered to Mike Martin. Sergeant McLean asked for Defendant's driver's license and the vehicle registration, but Defendant said that he did not have a license. Defendant told Sergeant McLean that he had just left Leonard's Bar and Grill, and Defendant said that he was "going back to jail" because he was a habitual motor vehicle offender. Defendant also said that he "shouldn't have been driving." He told Sergeant McLean that he was driving because he and his wife had gotten into an argument at Leonard's Bar, and "she took out walking, so he didn't have no choice but to drive." Sergeant McLean testified that the description Defendant gave of his wife matched a woman that Sergeant McLean had seen walking in front of the Lewisburg Police Department and the county jail. Sergeant McLean described the weather as being warm that night because he was not wearing a jacket when he stopped Defendant.

Sergeant McLean asked Defendant to step out if the vehicle and stand at the back of the car while he radioed in Defendant's name and date of birth. According to Sergeant McLean's report, Defendant "had a strong odor of alcohol on his person, eyes bloodshot, and he stagger[ed] when he exit[ed] the vehicle." He asked Defendant to perform a field sobriety test, and Defendant said, "I don't need to take it. I'm going to jail." A driver's license check confirmed that Defendant was a habitual motor vehicle offender. Sergeant McLean placed Defendant under arrest and transported him to the Marshall County Jail.

At the jail, Sergeant McLean read the implied consent form to Defendant, which advised Defendant of the opportunity to take a blood alcohol or breath test and that refusal

of the test would result in his driver's license being revoked, cancelled, or suspended. Defendant refused to submit to the test. Sergeant McLean then turned Defendant over to a Corrections Officer Justin Christmas to be booked into the jail. Officer Christmas testified that Defendant was taken to the holding cell where Defendant immediately passed out or went to sleep. Officer Christmas considered this to be an indication of someone under the influence of an intoxicant.

Elinor Foster, Marshall County Circuit Court Clerk, testified that the file in Case No. 12,760 contained an agreed order declaring Defendant to be a habitual motor vehicle offender. The order was still in effect on December 22, 2007.

Defendant testified that on December 22, 2007, he had worked from 8 a.m. until 8 p.m. He then went to the Finish Line bar with his wife and drank one beer at 10:00 p.m. and drank a second one at 11:00 p.m. Defendant denied being at Leonard's Bar and Grill because he did not have "credit" there. He said that he and his wife left the Finish Line bar when it closed at midnight. Defendant testified that his wife was driving them to a friend's house when he and his wife got into an argument. He said that his wife stopped in front of the jail, got out of the car, and began walking home.

Defendant testified that he sat in the car for a while and then became concerned for his wife because it was "freezing cold out," and she did not have a jacket. After approximately fifteen minutes, he then started the car and drove around looking for her. Concerning his reason for running the stop sign, Defendant testified:

> I had these size 14 Army boots. They weren't tied tight, and my wife had the seat pulled up. You know, I was in a rush to go find her, and I didn't come to a complete stop at the stop sign, and Sergeant McLean, he said he was waiting at the stop sign, but he was hiding down the road waiting for someone to run the stop sign. As soon as I didn't come to a complete stop, I looked over, and he lit up his blue lights, and I pulled right over across the street from the stop sign.

Defendant testified that he never told Sergeant McLean that he left Leonard's Bar and Grill. He said that he did not perform the field sobriety test because it was "freezing cold out." When asked why he refused the breath test, Defendant testified:

> Well, I used to work with a police officer. He said they jerk around the station and blow in the breathalyzer, just messing around, and one guy will have one shot, and he will be 500 pounds and fail it, and another guy will be 150 pounds and have 5 shots and pass it.

-3-

The co-worker advised him that he would be better off not taking the test. Defendant said that he fell asleep after he had been placed in the holding cell because it was 1:30 a.m., and he was tired.

*Trial - Case No. 08-CR-98*

Deanna Reed, an employee of the Marshall County Circuit Court, testified that according to Defendant's file, he made bond in Case No. 08-CR-16 on December 22, 2007. She said that the case was set for trial on August 4, 2008, with a pretrial conference on July 9, 2008. Ms. Reed testified that Defendant failed to appear in court on July 9, 2008, and a order granting a conditional forfeiture was entered on that date. A capias was issued for Defendant's arrest, and he was to be held without bond. Ms. Reed noted that it was the bonding company's responsibility to find Defendant. She testified that Defendant's file contained a paper stating that Defendant was arrested in Monroe County, Florida on September 6, 2008. The paper also contained a description of Defendant.

Katie Burk, an employee of the Marshall County Sheriff's Department, testified that she entered Defendant into the National Crime Information Center (NCIC) on July 28, 2008, as a wanted person for failure to appear. On September 7, 2008, Ms. Burk received a message that Defendant had been arrested on September 6, 2008, in Key West, Florida. Defendant was asked to sign a waiver of extradition back to Tennessee, but he refused, and a Governor's Warrant was obtained on July 9, 2009, asking that Defendant be returned to Tennessee. Ms. Burk testified that Defendant was eventually brought back to Marshall County.

Levy Cochran testified that he and his wife own Cochran Bonding. He "wrote a bond" for Defendant on December 22, 2007. Mr. Cochran testified that when Defendant failed to appear in court, a "scire facias" was issued to the company granting them six months "to bring [Defendant] in or get [him] into this court, the court - appointed - - whatever the bond is made in - - until we have to pay the bond." Mr. Cochran testified that it took approximately five and a half months to find Defendant. He initially went to Defendant's house but found that it had burned down. Mr. Cochran explained that he tracked Defendant to Massachusetts through Defendant's wife and then followed him "through middle Florida." He then learned that Defendant was arrested in Key West, Florida. Mr. Cochran testified that he would have taken care of requesting a continuance if Defendant's attorney could not. He said that Defendant never contacted him and advised him that Defendant's house burned. Mr. Cochran testified that he was in contact with Defendant's family members, but he never heard from Defendant.

Defendant testified that it was "very shocking" when his house burned in March of 2008, and it was hard to concentrate on other things. He also testified that a neighbor had attempted to molest his daughter in January of 2008. He said that his court case "slipped" his mind. Defendant testified that although he did not receive written notices regarding his court dates, he admitted that the bonding company or his attorney advised him of the dates. He said that his family wanted to move to Florida so he "packed up the truck," and they "headed South" in May or June of 2008. Defendant said that he was stressed at the time, and his court case was the "furthest thing" from his mind. He admitted that he did not let anyone know that he was moving to Florida. Defendant testified that he fought extradition back to Tennessee because he thought it was illegal because the "paperwork wasn't certified." He claimed that he never went to Massachusetts.

*Sentencing Hearing*

Jim Grimes, an employee of the Tennessee Board of Probation and Parole, testified that in preparing the presentence report, he attempted to talk with Defendant about his case. He said that Defendant "refused to make any comments and declined to fill out any paperwork." Mr. Grimes testified that Defendant said, "I am uncooperative; I am sure the Judge and the DA will give me the max[.]" Defendant also said that he was illegally sentenced in 2005 and that "they are all crooks, and if you are working for the State, you are a crook[.]" Mr. Grimes later asked a jail employee to talk with Defendant about the case, and Defendant again refused to comment. He said that Defendant indicated that he was going to sue the probation department.

Mr. Grimes testified that he found a presentence report that was written by Beth Flatt in regard to Defendant's sentencing hearing for another case in 2005. He incorporated that report into the present report. Mr. Grimes testified that he did not find any mitigating factors in Defendant's case, and he found at least three enhancement factors. He noted that Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range, and Defendant was on state parole for a conviction for driving after having been declared a habitual motor vehicle offender at the time of the present offenses.

Defendant testified that his aggravated assault conviction from 1987 in Volusia County, Florida had been improperly relied on by the State as a felony conviction when it was actually a misdemeanor. He claimed that he was filing "a belated appeal" in twenty-four of his previous cases because the conviction was used against him as a felony conviction in those cases. Defendant testified that he had three children, and his wife had two, and he helped take care of them. He had previously worked as a mechanic. Defendant said that his

wife still lived in Key West, Florida, and that he needed shoulder surgery from a scooter wreck and wanted to go back to his surgeon in Key West for the repair.

On cross-examination, the State submitted a certified copy of the Volusia County aggravated assault conviction, "a third degree felony, 873890, . . ., with the order of revocation of probation and the judgment form in relation to that case." Defendant denied that he used a .22-caliber rifle in the offense. He agreed that his first use of alcohol was at approximately the age of ten, and said that he "might smoke a joint every five years at a party." Defendant testified that he had also tried cocaine and methamphetamine. He had also been in two mental institutions.

## II. Analysis

### *Sufficiency of the Evidence*

Defendant challenges the sufficiency of the evidence for his DUI conviction and argues that there was insufficient evidence to show that he was intoxicated. When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, and the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Tuttle*, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Nor may this Court reweigh or re-evaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. *Id.* Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of [the] evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

Pursuant to the DUI statute in effect at the time of the offense,

[i]t is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises that is generally frequented by the public at large, while under the

influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system.

Tenn. Code Ann. § 55-10-401(a)(1).

Viewed in the light most favorable to the State, in this case, Sergeant McLean testified that he observed Defendant run a stop sign at the intersection of Spring Place Road and Belfast Road at approximately 1:00 a.m. He estimated that the vehicle was traveling five to ten miles per hour. When Sergeant McLean approached the car, Defendant said that he did not have a license and that he had just left Leonard's Bar and Grill. He also told Sergeant McLean that he should not have been driving and that he was going back to jail because he was a habitual motor vehicle offender. In his report, Sergeant McLean noted that Defendant "had a strong odor of alcohol on his person, eyes blood shot, and he stagger[ed] when he exit[ed] the vehicle." Defendant refused to perform a field sobriety test or take a breath or blood alcohol test. Corrections Officer Christmas testified that once Defendant was booked into the jail and placed in a holding cell, Defendant immediately went to sleep or passed out. Officer Christmas considered this to be an indication of someone who was under the influence of an intoxicant. Defendant himself testified that he and his wife had been at the Finish Line bar and said that he consumed two beers before leaving at midnight.

Based on our review of the evidence, we conclude that the evidence was sufficient to support beyond a reasonable doubt Defendant's conviction for DUI. Defendant is not entitled to relief in this appeal.

*Defense of Necessity*

Next, Defendant argues that the trial court erred in denying his request for jury instruction on the defense of necessity. The trial court has the duty of giving a correct and complete charge of the law applicable to the facts of the case, and the defendant has the right to have every issue of fact raised by the evidence and material to the defense submitted to the jury upon proper instructions by the trial court. *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990), *superseded by statute on other grounds as stated in State v. Reid*, 91 S.W.3d 247 (Tenn. 2002); *State v. Bryant*, 654 S.W.2d 389, 390 (Tenn. 1983); *State v. Thompson*, 519 S.W.2d 789, 792 (Tenn. 1975) (citing *Poe v. State*, 212 Tenn. 413, 370 S.W.2d 488 (1963)). Neither duress or necessity is an affirmative defense. Rather, both are general defenses and, as a result, if evidence fairly raises either defense, the trial court must submit the defense to the jury and must instruct the jury that any reasonable doubt on the existence of the defense requires acquittal. The State is required to negate the defense beyond a reasonable doubt. *State v. Culp*, 900 S.W.2d 707, 710 (Tenn. Crim. App. 1994); Tenn. Code Ann. § § 39-11-203, -504, -601, -609.

With regard to necessity, Tennessee Code Annotated section 39-11-609 provides:

> Except as provided in §§ 39-11-611 [through] 39-11-616, 39-11-620 and 39-11-621, conduct is justified if:
>
> (1) The person reasonably believes the conduct is immediately necessary to avoid imminent harm; and
>
> (2) The desirability and urgency of avoiding the harm clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness.

The sentencing Commission Comments to the section further states:

> This section codifies the common law defense of necessity. It excuses the criminal liability in those situations where criminal activity is an objectively reasonable response to an extreme situation. For example, the necessity defense would bar a trespass conviction for a hiker, stranded in a snowstorm, who spends the night in a vacant cabin rather than risking death sleeping in the open.
>
> The defense is limited to situations: (1) where the defendant acts upon a reasonable belief that the action is necessary to avoid harm; and (2) where the harm sought to be avoided is clearly greater than the harm caused by the criminal act.

Prior to the beginning of trial in this case, the State made a motion to preclude Defendant from presenting the defense of necessity. The trial court determined that Defendant could not be precluded from presenting the defense, but did not state whether it would give the defense of necessity as part of the jury charge. At the close of proof, Defendant asked the trial court to charge the jury on the defense of necessity. After hearing arguments from both sides, the trial court determined that the defense was not properly raised by the proof and refused to give the instruction.

At trial, Defendant testified that it was necessary for him to drive because his wife, who had been driving the car, got out and began walking home after an argument between the two. He claimed that he needed to find his wife because it was "freezing cold" outside, and she got out of the car wearing a thin shirt with no jacket. However, Defendant has failed to show that his actions were necessary to prevent harm to himself or to his wife. Sergeant McLean testified that he remembered the night of the offense to be a warm December night.

-8-

He said that he was not wearing a jacket at the time he stopped Defendant. The proof at trial also showed that Defendant and his wife stopped in front of the county jail and near the Lewisburg Police Department. In fact, Sergeant McLean testified that he saw a woman walking in front of the county jail who matched the description that Defendant gave of his wife. There was no indication that Defendant's wife was in any imminent danger or that Defendant could not have walked to the jail or to the police department and asked for help. We conclude that the trial court properly denied Defendant's request for a jury instruction on the defense of necessity because it was not fairly raised by the proof. This issue is without merit.

*Denial of a Continuance*

Third, Defendant contends that the trial court abused its discretion in denying his motion for a continuance. It is well established that the decision to grant a continuance rests within the sound discretion of the trial court and will not be overturned on appeal absent a clear showing of prejudice to the defendant. *State v. Russell*, 10 S.W.3d 270, 275 (Tenn. Crim. App. 1999)(citing *State v. Melson*, 638 S.W.2d 342, 359 (Tenn. 1982)); *Baxter v. State*, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973). In order to reverse the judgment of the trial court, we must be convinced that Defendant "did not have a fair trial and that a different result would or might reasonably have been reached had there been a different disposition of the application for a continuance." *Baxter*, 503 S.W.2d at 230.

We recognize that in most cases, a defendant seeking a continuance on the basis of an absent witness must support the motion with an affidavit alleging the substance of the witness's testimony, the testimony's relevance and materiality to the defense, that the testimony was admissible and not cumulative, that the witness would be available at a later date, and that counsel exercised diligence in trying to obtain the witness' presence at trial. *See State v. Dykes*, 803 S.W.2d 250, 257 (Tenn. Crim. App. 1990), *overruled on other grounds*; *State v. Bennett*, 798 S.W.2d 783, 787-88 (Tenn. Crim. App. 1990); *State v. Frahm*, 737 S.W.2d 799, 802 (Tenn. Crim. App. 1987). This Court has also recognized, however, that the lack of a written affidavit is not always controlling. *State v. Edward Mitchell*, No. W1999-01314-CCA-R3-CD, 2001 WL 204180 (Tenn. Crim. App., Jackson, Mar. 1, 2001), no perm. to appeal filed; *State v. Alvin Glenn Hughes*, No. 02C01-9208-CR-00183, 1993 WL 193712 (Tenn. Crim. App., Jackson, June 9, 1993), no perm. to appeal filed. Cases relying on the mandatory filing of an affidavit in support of a motion for a continuance rely primarily on case law decided before the adoption of the Tennessee Rules of Criminal Procedure. *Hughes*, 1993 WL 193712, at *4. Tennessee Code Annotated section 40-18-103(c) provides that the trial court may grant a continuance upon "good cause shown."

Defendant has failed to show that the trial court abused its discretion in denying his request for a continuance in this case. It appears from the record that Defendant's trial for failure to appear in Case No. 08-CR-98 was originally scheduled for October 7, 2010, however, the case was reset due to an unrelated trial on that date. The case was later reset for October 13, 2010. On the day of trial, Defendant indicated that he thought his trial was supposed to be on November 3, 2010. However, the trial court noted that an open date occurred sooner, and the case was reset for October 13, 2010. The court said, "Since we had a jury coming in it was my idea to put your case today. We have got to do it sooner or later." Defendant then told the court that he wanted to hire new counsel and that he was requesting a continuance because he wanted his wife to testify, and she had already bought a plane ticket for November 3, 2010. Concerning the continuance, the trial court said:

> The charge is failure to appear. I really don't know what witnesses you would have. I don't want to go into the facts of the case because that is not my role to discuss strategy. It seems to me like either you showed up or you didn't . That is just the way I would think of it.

Defendant then told the court that his house burned, and he had a good excuse for wanting to leave town. He also said, "I need my family here to testify, you know, of what happened and, you know, when, how and where. I am not being afforded that right."

Defendant offered no proof as what his wife's testimony or that of any other family member would have been or how the testimony was relevant to his trial for failure to appear. On appeal, Defendant has not alleged how he was prejudiced by the trial court's denial of his request for a continuance. Defendant is not entitled to relief on this issue.

*Consecutive Sentencing*

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is improper. *See* Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a Defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). This presumption of correctness, however, "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 Tenn. 1991)). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails," and our review is *de novo. Carter*,

254 S.W.3d at 345 (quoting *State v. Pierce*, 138 S.W.3d 820, 827 (Tenn. 2004); *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)).

A trial court may order sentences to run consecutively if the court finds by a preponderance of the evidence that any of the following factors are applicable:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of the defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b); *See also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). The length of the sentence should be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." Tenn. Code Ann. § 40-35-102(1), 103(2). Unless mandated by statute or rule, the determination of whether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court. *State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999).

In this case, the trial court found that consecutive sentencing was appropriate based on a finding that Defendant was an offender whose record of criminal activity is extensive. The trial court specifically found that the effective eleven-year sentence in this case was "justly deserved in relationship to the seriousness of these offenses and based on the defendant's prior record." The trial court further found that "less restrictive measures than confinement have frequently and recently been applied unsuccessfully to the defendant." At the sentencing hearing, Mr. Grimes testified that Defendant was on state parole for a conviction for driving after being declared a habitual traffic offender at the time of the offenses. Furthermore, Defendant's criminal record consists of thirty-seven convictions which include: ten DUI convictions, ten driving on a revoked license convictions, two resisting arrest convictions, three public intoxication convictions, two traffic offenses, three violations of the Motor Vehicle Habitual Offenders Act, two assault convictions, and convictions for theft, sale of a controlled substance, evading arrest, aggravated assault, and vandalism. The presence of a single factor is sufficient to justify the imposition of consecutive sentences under Tennessee Code Annotated section 40-35-115. *State v. Black*, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Defendant is not entitled to relief on this issue.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court is affirmed.

THOMAS T. WOODALL, JUDGE